[Crim. No. 2030. First Appellate District, Division Two.—July 6, 1938.]

In the Matter of the Application of HARRY ALLEN for a Writ of Habeas Corpus.

Leo Friedman for Petitioner.

U. S. Webb,· Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

NOURSE, P. J.—This is an original application for a writ of *habeas corpus*.

The petitioner is confined in the state prison at San Quentin under a judgment of conviction of murder in the second degree. He entered the prison on April 23, 1923, and on September 6, 1935, the board of prison terms and paroles passed

a resolution granting him a parole to become effective after he had served twelve and one-half years of his term of sentence. This resolution was rescinded on September 25, 1935. The order granting the parole was conditional upon his compliance "with all the requirements of law, rules and regulations governing parole".

■ On this application the petitioner contends that the order of September 25, 1935, is void because no cause then existed for a revocation of his parole; no cause was stated in the order of revocation; and no notice of the intended action was given the prisoner and no hearing thereon accorded him. The petitioner's case is based upon the theory that he was "on parole" from the time the original resolution was passed and that the order of rescission took from him an existing, or vested, right without notice or hearing, and without due process of law. His case is founded on the unsound theory that a prisoner is "on parole" from the date when the board determines that a parole should issue at some future date, and that this "right" cannot be suspended or canceled without according the prisoner a trial on some legal "cause".

A parole, as that term is used in section 1168 of the Penal Code, is a release from confinement within the prison. The power of the board is fixed in subsection 4 of this section as a power to provide rules and regulations whereby a prisoner who has served the period of time prescribed by this section, "may be allowed to go upon parole outside the prison buildings and inclosures". In Webster's Unabridged International Dictionary, second edition, the word "parole" is defined in its legal sense as follows: "A conditional and revocable release, upon his own recognizance or subject to supervision provided by statute, of a prisoner with indeterminate or unexpired sentence." Thus a prisoner is not on parole until he is released from confinement in the prison, and, until this situation arises, there is no ground for the application of the rules relating to "revocation" of the parole, and no pertinency of the decisions covering "due process", notice, and hearing. The situation here is that the action of the board is nothing more than a determination that it will, at a future date, release the prisoner on parole unless intervening circumstances should prompt the board to retain him in further custody. To reach that result, the board may either rescind the resolution or suspend the granting of the

parole either indefinitely or until another fixed date. The second paragraph of this subsection makes the legislative intention clear when it provides that in no case shall a prisoner be "paroled" until he has served one calendar year, but "in any case the *matter of parole* may be determined by the board at any time after the expiration of six months" of his actual imprisonment. Thus the board may determine the matter of parole, i. e., determine at what time and under what conditions the prisoner may be granted a parole and released "on parole" from confinement within the prison, and such determination may be made years in advance of the time fixed for release. But, until such release, the prisoner is not "on parole".

The code section carries a clear distinction between suspension, rescission, and revocation in their application to paroles and to the proceedings of the board. The twelfth paragraph of subsection four gives the board: "Full power to make and enforce rules and regulations relating to the parole of prisoners, to grant paroles thereunder, to suspend, cancel and/or revoke paroles without notice, and to retake and imprison any prisoner *so upon parole.*" The fifteenth paragraph of the same subsection reads: "No parole shall be *revoked* and no credits forfeited without cause, which cause must be stated in the *order revoking the parole,* or forfeiting the credits." It will be noted that no such restriction is placed upon the suspension or cancellation of the determination to grant a parole. It is obvious that if the prisoner is still within the confines of the prison no order to "retake and imprison" him would be necessary. It is equally obvious that if the conduct of the prisoner while in the prison does not justify his release on parole, no statutory or constitutional right demands a notice and hearing before the board can set aside or rescind its action granting a parole. Such determinations as we have here are disciplinary in nature. They hold out to the prisoner the chance of parole unless his conduct in the meantime is such as to require further confinement. They are in harmony with the practice which has been followed by the prison authorities for a long period of years. Since this practice is a matter of common knowledge, it is fair to assume that the legislature has had it in mind during the frequent amendments to the code section, and that it was the legislative intent to permit the board to

agree upon a parole to be effective at a future day, conditional upon the conduct of the prisoner in the *interim,* and subject to the conditions and circumstances existing at the expiration of that period. Such action by the board is, like any similar administrative determination, subject to rescission or modification at the will of the board and is not restricted by the rules of due process, notice, and hearing which apply to and limit the deprivation of a vested right arising out of the prior action of an administrative body.

The writ is discharged, and the prisoner is remanded to the custody of the warden.

Sturtevant, J., and Spence, J., concurred.

An application by petitioner to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 4, 1938.