WADE *v.* THE STATE.

No. 14497. MAY 8, 1943.

*W. D. Aultman,* for plaintiff in error.

*T. Grady Head, attorney-general, Charles H. Garrett, solicitor-general,* and *L. C. Groves, assistant attorney-general,* contra.

REID, Chief Justice. Nelson Wade and J. E. Wade Jr. were jointly indicted for the offense of arson in the capital form. Upon

a separate trial Nelson Wade was found guilty, with recommendation of mercy. His motion for new trial was overruled, and he excepted, assigning error on the general grounds only.

The evidence at the trial developed that E. J. Stembridge and H. L. Justice owned and operated a place of business known as "The Blue Top" located in Crawford County on State highway No. 22 between Roberta and Macon, and at nights their employee, Rufus L. Dent, a young man about seventeen years of age, slept in a room in the rear of the building provided for that purpose. The building was a frame structure, housing a grocery store, dance-hall, the room used for living quarters, an office, and the rest-rooms. Rufus L. Dent carried keys to all the doors in the building. He owned an automobile which on the night in question, as was usual and customary, was parked by the window of his bed-room. On the morning of November 26, 1941, the building was destroyed by fire, producing the death of Rufus L. Dent. The charred remains of his body were found in the front of the building just inside the dance-hall, indicating that he had left his bedroom before he succumbed. His keys were found in the living quarters, and part of a wrist watch, identified as being similar to a part of the watch he owned and was wearing just before the fire, was discovered in the springs of his bed. Charlie Bloodworth, a cousin of Dent, had been with Dent at The Blue Top until ten-thirty o'clock on the night of the 25th, at which time Dent turned out the lights, closed and locked the doors to the store; and the two then rode in Dent's automobile to Roberta, a distance of six miles. Returning they passed by The Blue Top going to Blood-worth's home, located two miles beyond The Blue Top, where Bloodworth got out of the automobile at eleven-thirty o'clock. When they left the store the fire was completely out in the heater, and there was no fire burning in the building. Before closing, however, Dent checked his money, put it in a cigar-box and placed it behind the counter. After the building burned, about $38 in silver coins were found at that location. Lamar Potts, of Macon, testified that he and Roy Black, also of Macon, shortly after midnight passed The Blue Top and discovered the fire, that it had just begun to burn through the roof at the rear center of the building, and the building was full of smoke. Potts heard no movement or scramble in the building. He tried to get in at the front

door, but it was locked, and he could not raise the window· on the front. He drove Dent's automobile, which was parked beside the window on the Roberta side, across the highway, and notified a negro in the neighborhood, who stated that a boy was supposed to be in there.

J. E. Wade Jr., the codefendant and accomplice (who, at the time of the trial, had already been tried, found guilty with recommendation of mercy, and was serving his sentence at the State Penitentiary), testified that he was a second cousin and brother-in-law of Nelson Wade, he having married Nelson's sister. Nelson lived with his grandfather in Peach County, and J. E. Wade Jr. and his wife lived in his father's home, which was located about a mile and half from The Blue Top and about a mile from the ·highway. ° Nelson Wade had come to his house for a visit on Monday before the fire on Tuesday night. J. E. Wade Jr. suggested to Nelson, about nine or ten o'clock Tuesday night, that The Blue Top should be burned, and asked him if that was the thing to do. Nelson agreeing, they siphoned a quart of gasoline out the automobile and put it in a quart fruit-jar. · At the suggestion of Nelson, J. E. Jr. procured his father's pistol, loaded it and put it in his pocket, and gave Nelson some whisky from a jug which was hidden in the field near the house, in the broom-sedge. Proceeding to the highway, they built a fire near the road a short distance from and within sight of The Blue Top; and while waiting there, Rufus Dent passed by, going west toward Roberta. They were still waiting when Dent returned and passed on by The Blue Top. J. E. Jr. did not see Rufus Dent when he came back, but stated that Nelson said it was his car going in at The Blue Top; whereupon J. E. Jr. remarked, "If it was a car going in there it was Rufus, and he would be asleep there, and if we set fire to the place he would burn up." Nelson said, "Burn the son of a bitch up; he ought not be in there." J. E. Jr. then asked, "Why did he [Nelson] want to do that for," and Nelson said Rufus used to fight him when he went to school, and that Rufus used to whip him. J. E. Jr. further testified that he and Nelson went up to the right front corner of the building where Nelson gave him the gas. They struck matches, looking for a good place to put the fire. J. E. Jr. got some wood, placed it under the building, taking the gas from Nelson, who stated he would go to the other corner of the build-

ing on the Roberta side and watch, at the same time telling J. E. Jr. to set it on fire at the back. After Nelson had gone to watch, J. E. Jr. went to the rear of the building, poured the gas on the room where a door was open (evidently the rest-room) and set a match to it, walked to the road where he saw Nelson going down the highway about 150 feet, walking fast but not running. J. E. Jr. followed Nelson home, where he found him in bed. Nelson never stated to J. E. Jr. that he did not desire to participate in the burning, and never intimated any intention to withdraw from the venture, and never requested J. E. Jr. to desist. Nelson requested J. E. Jr. to furnish him with a pair of his shoes, which Nelson wore on the trip, refusing to wear his own. J. E. Wade Jr. was twenty years of age; and Nelson was about sixteen years of age. J. E. Jr. testified that he originally told Sheriff O'Neal that Nelson had nothing to do with the fire, and assumed all the responsibility, but that was a lie, and that Nelson was an active aide and participant. He stated further that he knew Rufus Dent was in the building when he set it on fire, but thought he would get out.

Two written statements made under oath by Nelson Wade were introduced by the State; one dated Decembr 3, 1941, and the other December 6, 1941. These statements were made voluntarily and without promise of reward; and the events recited therein leading up to the burning of the building are substantially in accord with the testimony of J. E. Wade Jr., except that Nelson attempted to exonerate himself of active participation in the planning and actual burning of the building, stating that he left The Blue Top before the fire was applied to the building by J. E. Wade Jr. He stated that he saw Rufus Dent park his car by the window to his bedroom, and knew he was in the building. Leroy Griffin of Macon, Georgia, testified: "After that fire I saw Nelson Wade and had some talk with him about the fire. I saw him on Mulberry Street in Macon, January 6th of this year, and I talked to him. . . I said, 'Why come you to burn it up; didn't you know the boy was in there?' and he said, 'Yes,' and I said, 'What did you want to burn him up for; he had not hurt you or J. E.,' and he said, 'He used to fight me when I went to school, . . I don't like him for that,' and I said, 'Who whipped?' and he said, 'He did,' and I said, 'All boys fight when they go to school;

. . you have not got to burn a fellow up for that; . . you will do the same thing to me or anybody else;' and he said, 'Well, he is burned up, and I am glad the son of a bitch is dead myself.' . . Nelson told me he took the responsibility for the starting of the whole thing, him and Lillian planned the thing out, after J. E. went to the field, and Lillian thought he went to The Blue Top, and she said it was a sorry place and she didn't want him hanging around there; she wanted it burned up to keep him from hanging around that place. That is what Nelson said. . . He told me he got J. E. to go along with him. He told me that J. E. drew the gas out of the tank; that he [Nelson] didn't know how to suck it out of the car-tank, and Nelson held the jar while J. E. sucked the gas through the hose into the jar. After that Nelson said they went on down there and said they saw Rufus when he left, and they waited until he come back, and Nelson told him to watch until Rufus come back and went to sleep, and when he come back it was about thirty minutes. They were close by, waiting until he got back in, and they would give him thirty or forty minutes to get to sleep before they set fire to the building to burn it up." C. M. Mercer and Hugh M. Jacobs, both of Macon, testified that while they were employed at Robins Field, Wellston, in May or June, 1942, Nelson Wade was employed there and was the helper of Hugh M. Jacobs, who was a painter. Both of these witnesses had learned that Nelson Wade had been implicated with the fire in question, and understood that he had been indicted and was at liberty under bond while he was employed at Robins Field. Nelson Wade, on several occasions, had made statements to them and to others in their presence, regarding his connection with the fire, which were similar in substance and in particulars to the statement made to Leroy Griffin as above set out. There was evidence to the effect that all the statements made by defendant to Mercer, Griffin, and Jacobs were made voluntarily, uncoerced and without promise of reward. There was some evidence of rumors to the effect that J. E. Wade Jr. had been selling whisky around The Blue Top, and Mr. Justice, one of the owners of the building, had asked him not to sell any more. J. E. Wade Jr. denied having done so. The keys and the back of the watch found in the ruins of the burned building, identified as belonging to Rufus Dent, and the piece of

hose identified as being the one used by J. E. Wade Jr. and defendant in siphoning the gasoline from the tank of an automobile at the home of J. E. Wade Jr., which was used in igniting the fire, were introduced in evidence. The defendant in his statement to the jury (no evidence having been introduced in his behalf) admitted accompanying J. E. Wade Jr. to the Blue Top, but denied that he assisted J. E. Wade Jr. in setting the fire, and stated that he told J. E. Wade Jr. not to do it.

1. The defendant was indicted and convicted of the offense of arson in the capital form, as defined in the Code, § 26-2208, as follows: "Any person who wilfully or maliciously, or with intent to defraud, sets fire to, or burns, or causes to be burned, or who aids, counsels, or procures the burning of any dwelling-house, or any kitchen, shop, barn, stable, or other outhouse that is parcel thereof, or belonging to or adjoining thereto, the property of himself or of another, shall be guilty of arson, and upon conviction thereof be sentenced to the penitentiary for not less than two nor more than twenty years, provided the arson shall not produce the death or maiming of any person. If the arson shall produce the death or maiming of any person, the punishment shall be death, in conformity with the provisions of section 26-1005." Since the assignments of error go to the general grounds only, it is necessary to test the sufficiency of the evidence. Although the building here involved was used for grocery store, dance-hall and filling-station, its one bedroom which was used as sleeping quarters for the employee who lost his life as a result of the burning of the building was sufficient to constitute it a dwelling within the meaning of the statute. *McLane* v. *State,* 4 *Ga.* 335, 336, 342; People *v.* Oliff, 261 Ill. 237 (197 N. E. 777, 780) ; People *v.* Orcott (N. Y.), 1 Parker's Cr. R. 252, 255.

2. It was incumbent upon the State to establish the corpus delicti. "In a case of arson, the corpus delicti consists of two fundamental facts: first, the burning of the house described in the indictment; and second, the fact that a criminal agency was the cause of the burning." *West* v. *State,* 6 *Ga. App.* 105 (64 S. E. 130) ; *Phillips* v. *State,* 29 *Ga.* 105, 108; *Jones* v. *State,* 50 *Ga. App.* 97, 98 (176 S. E. 896). While "On a trial for arson, if nothing appears but the mere fact that the house was consumed by fire, the presumption is that the fire was the result of acci-

dental, or natural or providential cause" (*West* v. *State,* supra), the "corpus delicti may be proved by circumstantial evidence, as well as by direct evidence." *Buckhanon* v. *State,* 151 *Ga.* 827 (8*b*) (108 S. E. 209). The statements freely and voluntarily made by the defendant to the witnesses Mercer, Griffin, and Jacobs, subsequently to the burning, definitely amounted to confessions. *Owens* v. *State,* 120 *Ga.* 296 (48 S. E. 21); *Coates* v. *State,* 192 *Ga.* 130 (15 S. E. 2d, 240), and cit. The State was thus fortified by the confession of the defendant, the incriminating written statements made by him and introduced in evidence, the testimony of the accomplice, and circumstantial evidence which corroborated both the confession and the testimony of the accomplice. The rubber hose with which the gasoline was siphoned from the tank of the automobile was in evidence; there was the testimony of Potts, presumably the first person to discover the fire, who stated that the fire was just beginning to come through the roof at the rear of the building, which substantiated J. E. Wade Jr., the accomplice, as to the part of the building where the fire was first applied. Aside from the confession, we think the evidence, both direct and circumstantial, was amply sufficient to establish the corpus delicti. "The testimony of an accomplice that the defendant actively participated in the unlawful burning of the schoolhouse in question, corroborated by the plenary confession of the defendant, supports the verdict finding the defendant guilty of arson." *Usher* v. *State,* 54 *Ga. App.* 345 (5) (187 S. E. 881), citing *Partee* v. *State,* 67 *Ga.* 570 (2); *Whitener* v. *State,* 34 *Ga. App.* 697 (131 S. E. 301); *Pope* v. *State,* 171 *Ga.* 655, 656 (156 S. E. 599); *Lancaster* v. *State,* 54 *Ga. App.* 243 (187 S. E. 617).

3. The evidence of J. E. Wade Jr., the accomplice, who had already been tried and convicted of the same offense, was corroborated by the incriminating statements and confessions of the defendant, as well as by circumstantial evidence stated above. This court, in *Partee* v. *State,* 67 *Ga.* 570, 572, which involved the crime of burglary, laid down the unequivocal rule that a confession alone is sufficient to corroborate the testimony of an accomplice, so as to support a verdict of guilty. The evidence of the accomplice has been assailed by the plaintiff in error. It is true that the record shows that J. E. Wade Jr. originally absolved the defendant of actual participation in the crime, and undertook to assume full re-

sponsibility himself; yet, upon the trial of the case now before the court, he stated that he had lied in that respect, and that Nelson was actively involved. The testimony of this accomplice was in all respects, concerning the preparation and actual burning of the building, substantially in accord with the two sworn statements in writing, freely and voluntarily made by the defendant a few days after the commission of the crime, except that the defendant attempted to vindicate himself by stating that he became frightened and ran away before the application of the fire to the building. This, as has been pointed out, was disputed by the accomplice, whose testimony was amply corroborated. *Usher* v. *State,* supra. The defense that the defendant repented and withdrew from the plan to commit the act of burning the building before the actual application of the fire was submitted to the jury under appropriate instructions from the court. Perpetrators of the crime of arson usually resort to the shield of darkness or other methods of concealing their identity, thus rendering solution and proof thereof difficult. In this connection this court has said: "Arson can seldom be established by positive testimony. The character of the offense makes it necessarily dependent for conviction upon confessions and corroborating circumstances. The force to be given to the corroboration must be left to an upright and intelligent jury." *Smith* v. *State,* 64 *Ga.* 605. The jury were the exclusive judges of the credibility of the witnesses and the weight to be given to the evidence. No other error being complained of, we think the evidence abundantly supported the verdict, and that the court did not err in denying a new trial.

*Judgment affirmed. All the Justices concur.*