[Crim. No. 4755. In Bank. Dec. 2, 1947.]

In re CLIFFORD BRAMBLE, on Habeas Corpus.

Clifford Bramble, in pro. per., and C. K. Curtright, under appointment by the Supreme Court, for Petitioner.

Robert W. Kenny, Fred N. Howser, Attorneys General, and David K. Lener, Deputy Attorney General, for Respondent.

SCHAUER, J.—Petitioner, in this habeas corpus proceeding, challenges (1) the validity of four substantially identical 1939 judgments (entered on successive counts in a single proceeding) under which he is confined in the state prison at Folsom and (2) the correctness of the ancillary determination that he is an habitual criminal who has suffered three prior convictions.

The conviction as to each of the four substantive offenses was upon petitioner's plea of guilty to the several offenses "as charged" in the indictment. Petitioner was accused in count 1 of the indictment "of the crime of Arson committed as follows: That . . . Clifford Bramble on the 23d day of December 1936 at the County of Sacramento in the State of California, did then and there willfully, unlawfully and feloniously and maliciously set fire to and burn and cause to be burned the *store building* located at 718 K Street, in the City of Sacramento, California, commonly known as Woolworth's." (Italics added.) Counts 2, 3 and 4 in similar language charge the burning of other specifically identified *store buildings* in Sacramento on December 23, 1936, and January 11 and February 12, 1937, respectively.

The respondent warden in his return to the writ sets forth, as an exhibit, a certified copy of the minutes of the superior court showing the arraignment of the petitioner (as defendant) for judgment, and the pronouncement of judgment on each of the four counts of the indictment. The minutes recite that "The defendant was duly informed by the Court of the Second Amended Indictment filed against him for the crime of Arson and three prior convictions"; that the defendant was asked if he had any "legal cause" to show why judgment should not be pronounced, and answered that he had none; that "thereupon the Court renders its judgment: That whereas the said Clifford Bramble has been duly convicted in this Court

of the crime of *Arson as charged* in Counts 1, 2, 3, and 4 *as charged* in the Second Amended Indictment . . . [and has also admitted the prior convictions of felony] as charged in'' such indictment, ''It is the judgment and sentence of the Court as punishment for the crime of *Arson as charged* in Count 1 . . . for which said defendant . . . was convicted . . ., said defendant having been previously three times convicted upon charges of Grand Larceny, Burglary and Grand Larceny of the First Degree, separately brought and tried, and said defendant served separate terms therefor, that the said defendant . . . be imprisoned in the State Prison . . . for the term of his natural life.'' (Italics added.) A separate judgment, in substantially identical language, was pronounced on each of the four counts.

It is thus apparent that the trial court adjudicated conviction of the substantive offenses of four counts of ''Arson as charged,'' and that each judgment refers to three prior convictions of offenses the names of which correspond to the names of crimes enumerated in section 644 of the Penal Code. We have concluded that the judgments of conviction of the substantive offenses are valid but that the adjudicated elements of only two of the three prior offenses are equivalent to the essential elements of offenses enumerated in section 644 of the Penal Code; that petitioner is not presently entitled to an order for his release from custody but that he is not, as a matter of law, ineligible for release on parole.

### The Substantive Offenses

■ Relative to the judgments of conviction of the four substantive offenses, petitioner urges as to each ''that the said purported judgment of said Superior Court . . . was and is void, for the reason that the same was and is without the jurisdiction of said Superior Court to give or make in said . . . action, it being neither alleged nor proven in said action that said crime of Arson had been committed by petitioner.'' There is no merit in this contention.

The argument advanced by petitioner in support of such contention is to the effect that he stands sentenced for the crime of arson and that such crime was not charged in the indictment, hence the judgment was beyond the jurisdiction of the court. He urges that the word ''arson,'' both at common law and by the statutes of California, has a limited technical meaning; i.e., the wilful and malicious ''burning

of any *dwelling-house,* or . . . parcel thereof'' (italics added), and that the specification in the indictment as to each count that the crime was ''committed as follows: That . . . Clifford Bramble on the [date and at the place alleged in the respective counts] . . . did then and there . . . maliciously set.fire and burn . . . the *store building* located at [a street address as specified in the respective counts] . . . in the City of Sacramento, California, commonly known as ['Woolworth's,' in count 1; 'Grant's,' in count 2; 'F. Lagomarsino & Sons,' in count 3; 'Marcus Auto Supply Co.,' in count 4]'' (italics added), renders the pleading not only insufficient to charge the burning of a ''dwelling-house, or . . . parcel thereof'' but effectively establishes that the offense was something other than the burning of a ''dwelling-house, or . . . parcel thereof''; i.e., the burning of a store building, and, hence, as above noted, that the court was without jurisdiction to sentence him for the crime of arson.

The above epitomized argument of petitioner is wholly untenable. Of course, if an indictment charged one offense and the court undertook to sentence the defendant for a different offense not that, or included in that charged, the sentence pronounced could not be sustained. But we have no such case here. As appears from the previously quoted excerpts from the judgments the court in rendering the same and as a part thereof declared them to be for ''the crime of Arson *as charged* in Counts 1, 2, 3, and 4 *as charged* in the Second Amended Indictment'' (italics added), and in pronouncing the sentence as to each count stated, ''It is the judgment and sentence of the Court as punishment for the crime of Arson *as charged* in Count [specifying the number] . . . that the said defendant . . . be imprisoned in the State Prison,'' etc. In the light of the quoted language there can be no doubt here but that the defendant was sentenced as to each count for the precise offense, and only the offense, with which he was charged.

There is no contention that the indictment is insufficient to state a public offense—violation of section 448a*, Penal Code—neither is there any contention by either petitioner or the state that such indictment states any offense other than violations of section 448a.. As above stated, petitioner urges merely that he is sentenced for an offense different

*See footnote below for quotations of material parts of sections 447a and 448a.

from that alleged in the indictment: i.e., that while the pleading charges him with violations of section 448a the judgments, through the use therein of the word "Arson," sentence him for violations of section 447a.* This contention is based on an untenably (in California) narrow meaning of the word "Arson."

### History and Evolution of the Word "Arson"

It is true that at common law the offense of arson was "the wilful and malicious burning of the dwelling house of another. It was an offense against the security of habitation and . . . was considered an aggravated felony and of greater enormity than any other unlawful burning because it manifested in the perpetrator a greater recklessness and contempt of human life than the burning of a building in which no human being was presumed to be." (4 Am.Jur. 87.) It is also true that at the present time in California in the several code sections defining various crimes of malicious burning of property the word "arson"† appears in only one (Pen. Code, § 447a). But the history of legislation on the subject shows that in this state the word, for more than 97 years, has had a broader signification than it had at common law. From 1850 until 1929 "arson" included the wilful and malicious burning not only of dwelling houses but also of "any . . . store-house, warehouse, or other

---

†Its usage is as follows (Pen. Code, § 447a): "Any person who willfully and maliciously sets fire to or burns or causes to be burned . . . or procures the burning of any dwelling-house or any kitchen, shop, barn, stable or other outhouse that is parcel thereof . . . whether the property of himself or of another, shall be guilty of arson, and upon conviction thereof, be sentenced to the penitentiary for not less than two nor more than twenty years."

Section 448a (Penal Code) provides that "Any person who willfully and maliciously sets fire to or burns or causes to be burned or who . . . procures the burning of any barn, stable, garage or other building, whether the property of himself or of another, *not a parcel of a dwelling-house; or any shop, storehouse, warehouse,* factory, mill *or other building,* whether the property of himself or of another; or any church, meeting-house, courthouse, workhouse, school, jail or other public building or any public bridge; shall, upon conviction thereof, be sentenced to the penitentiary for not less than one nor more than ten years." (Italics added.)

Sections 449a and 450a provide in quite similar language varying punishments for, respectively, the malicious burning of personal property and the burning of insured chattels with the intent of defrauding the insurer. Then follows section 451a, which enacts that "Any person who wilfully and maliciously attempts to set fire to or attempts to burn . . . or procure the burning of any of the buildings or property mentioned in the foregoing sections . . . shall upon conviction thereof, be sentenced to the penitentiary for not less than one nor more than two years. . . . ."

building, the property of any other person'' (Comp. Laws of California, 1850-1853, p. 646, sixth div., § 56). In 1856 (Stats. 1856, p. 132) those acts of arson which consisted of wilfully and maliciously burning ''any dwelling house, the property of another, *in the daytime,* or in the night or daytime, wilfully burn[ing] . . . any kitchen, office, *shop,* barn, stable, *storehouse,* warehouse *or other building* [other than a dwelling house], or stacks or stocks of grain . . .'' (italics added) were declared to be ''arson in the second degree.'' With the adoption of the codes in 1872 section 447 of the Penal Code defined arson as follows: ''Arson is the willful and malicious burning of a building, with intent to destroy it.'' Section 454 provided that ''Maliciously burning in the night-time an inhabited building in which there is at the time some human being, is arson in the first degree. All other kinds of arson are of the second degree'' and section 455 fixed the punishment for arson in the first degree as imprisonment in the state prison ''for not less than two years'' while for arson in the second degree the penalty was like imprisonment ''for not less than one nor more than ten years.'' Except for substituting ''twenty-five'' for ''ten'' in the provision for punishment of second degree arson in 1901 (Stats. 1901, p. 664) these sections stood as the law of California until 1929 when (Stats. 1929, p. 46), they, together with other sections concerning arson, were repealed and the present sections 447a, 448a, 449a, 450a and 451a, were adopted. The chapter of the code (ch. 1, tit. 13, pt. 1), for whatever significance it may have, still bears the title ''Arson.'' The code commissioners' notes say: ''the statutes of this state have enlarged the use of the term to include many acts of burning not involving special danger to the person. Thus, burning stacks of grain, standing crops, bridges, etc., is arson in the second degree. . . . The commissioners recommend that the term 'arson' be confined to the offense of setting on fire buildings (including ships and vessels). Other criminal acts of burning are not properly classified under the title of 'arson,' but under the title of 'malicious mischief.' '' Our code sections on arson as originally adopted were based on the New York code. The New York code commissioners say: ''Originally, arson was the burning of a human habitation. The term has been, in this state, and in other jurisdictions, extended by statute, to embrace the burning of other descriptions of property not involving danger to human life.'' In

*People* v. *Angelopoulos* (1939), 30 Cal.App.2d 538, 541, 551 [86 P.2d 873], the offense of burning a "store building" was charged as a violation of section 448a of the Penal Code and was denominated "arson."

It thus appears that there are ample historical and legal bases for designating the acts enumerated in section 448a as "arson." ■ The real purpose of differentiating the acts listed in section 448a from those included in 447a is apparently not to change the nomenclature but to provide a convenient method of pleading and identifying the two classes of acts which are deemed to merit different punishments. The penalty for violating section 447a (burning a dwelling house) is "not less than two nor more than twenty years" imprisonment while for violating section 448a (burning "any . . . building . . . not a parcel of a dwelling-house") the term of imprisonment is "not less than one nor, more than ten years." Section 644 impliedly recognizes that arson may be committed by violating section 448a as well as by violating 447a, for it distinguishes between the classes of arson by including, of the malicious burning offenses, only "arson as defined in Section 447a of this code" among the substantive offenses upon conviction of which a person may be held to be an habitual criminal if he has also previously been convicted and served terms of imprisonment for the offenses therein enumerated as a basis for such determination. For the foregoing reasons it is obvious that the use of the word "arson" in the indictment and in the judgments is not inconsistent with the specification that the offenses were committed by the burning of store buildings.

As previously mentioned, there is no contention that the indictment fails to state a public offense or any offense other. than violation of section 448a. ■ Even if the judgments were otherwise uncertain they become reasonably certain by reference to the indictment and record. (*In re Basuino* (1943), 22 Cal.2d 247, 251 [138 P.2d 297].) We have before us no question such as would arise if section 447a were the only statute defining a crime of malicious burning. If it were the only section on that subject, then the question would be one of sufficiency of pleading to state a public offense and the effect of the rules limiting the scope of inquiry on habeas corpus in such cases (see 13 Cal.Jur. 232-233, § 14; *In re Leach* (1932), 215 Cal. 536, 547 [12 P.2d 3]; *In re Wilson* (1925), 196 Cal. 515, 518 [238 P. 359]; *In re Kavanaugh* (1919), 180 Cal. 181, 182 [180 P. 533]; *In re Ruef* (1907),

150 Cal. 665, 666 [89 P. 605]) would have to be considered. But here the only possible uncertainty would relate to the identity of the offense pleaded (as being a violation of section 448a or of 447a, Penal Code), not to sufficiency of the pleading.

As to identity of the offense the attorney general concedes in his brief that the indictment charges violation of section 448a and not violation of section 447a, and there can be little doubt as to the soundness of his concession. If the pleader had intended to charge violation of section 447a rather than violation of section 448a and if the facts had justified the graver charge, it would have been easy to aver that the buildings burned were used in part or in whole, or as parcels, of dwelling houses. The words "store building" are certainly not synonymous with "dwelling house or parcel thereof." As already mentioned the burning of a "store building" has heretofore in this state been charged as a violation of section 448a and the case is referred to as "prosecution for arson" (*People* v. *Angelopoulos* (1939), *supra*, 30 Cal.App. 2d 538, headnote [1] and pp. 541, 551.) ▇ Furthermore, if there be any reasonable doubt as to identity of offense we are bound to resolve that doubt in favor of petitioner. As declared in *People* v. *Ralph* (1944), 24 Cal.2d 575, 581 [150 P.2d 401], "the defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute." (See, also, *In re McVickers* (1946), 29 Cal.2d 264, 278 [176 P.2d 40].) The rule applies equally in determining any question as to the identity of the offense charged and to which the defendant pleaded guilty where upon the whole record there is a reasonable doubt as to whether the defendant pleaded guilty to, or the judgment sentences the defendant for, a greater or lesser offense. ▇ The rule that on habeas corpus we will presume the validity of a judgment does not mean that we shall presume the harsher of two equally reasonable constructions of the judgment.

Both the indictment and the judgments might well have designated by number the code section which the petitioner was charged with and convicted of violating but we are satisfied that the defect is of artificiality rather than of substance; that the judgments, by reference to the pleadings, are amply certain to identify the offenses and that they constitute valid

adjudications of conviction of the four substantive offenses of violation of section 448a of the Penal Code as charged in the indictment.

It may also be observed that petitioner's contention that he was sentenced for an offense other than that charged could in no event benefit him under the circumstances of this case. It has already been shown that the sentence pronounced is in no instance broader than the charge; for each count it was "for the crime of Arson as charged" in the particular count under consideration. ■ But if in fact the judgments had been given for offenses other than those charged and to which the petitioner pleaded guilty, he would not be entitled to release but only to be returned to the superior court and resentenced for the charged and admitted offenses, with possible loss of credit for the time he has already served. (13 Cal.Jur. 281; *In re Ralph* (1946), 27 Cal.2d 866, 872 [168 P.2d 1].)

### The Prior Convictions

■ Petitioner contends that the prior conviction, alleged and admitted, "of a felony, to wit: Grand Larceny," in North Dakota is not available to support a determination that he is an habitual criminal. The charge against him in the indictment does not allege that he was convicted in North Dakota of any offense which meets the requirements of California's section 644. It charges him merely with the conviction of grand larceny in North Dakota, which, we are bound to judicially notice, in California might be either grand theft or petty theft. Looking beyond the face of the record, it appears from copies of the North Dakota information and judgment that petitioner in 1917 was charged with, pleaded guilty to, and was convicted of larceny of personal property of the value of $47. At that time the commission of such an offense in California would have amounted only to "petit larceny" (Pen. Code, § 487, as amended, Stats. 1907, p. 113), a crime not mentioned in section 644 of the Penal Code at the time the substantive offenses were committed. Therefore, the contention of petitioner last above stated is correct. (*In re McVickers* (1946), *supra,* 29 Cal.2d 264, 269; *In re Seeley* (1946), 29 Cal.2d 294, 299 [176 P.2d 24]; and cases there cited.) However, as hereinafter explained, the correctness of such contention does not affect the minimum term of petitioner's imprisonment prescribed by the habitual criminal act as it now reads.

Petitioner does not dispute the competency of an alleged and admitted prior conviction of burglary in California to support a determination of habitual criminality. The third alleged and admitted prior conviction is "of a felony, to-wit: Grand Larceny in the first degree," in Minnesota. The conviction, it appears from copies of the Minnesota information and judgment, occurred in 1925 upon petitioner's plea of guilty to a charge of stealing personal property of the value of $562. The conviction, therefore, was of a crime equivalent to the then California offense of grand theft (Pen. Code, § 487, as amended, Stats. 1923, p. 271) and as such was a competent element to be considered in determining petitioner's status as an habitual criminal.

### Term of Imprisonment and Eligibility to Parole

 Petitioner's minimum term of imprisonment is presently prescribed by section 3048.5 of the Penal Code. That section provides that every person who was determined to be an habitual criminal under either paragraph (a) (two prior convictions) or paragraph (b) (three prior convictions) of section 644 of the Penal Code as such section read before the effective date of "this act" (Stats. 1945, ch. 935, which amended section 644 and added section 3048.5), and who could not be determined to be an habitual criminal under section 644 as amended by the 1945 act, "shall be deemed to be imprisoned for life and shall be eligible for release on parole after he shall have served a minimum term of seven calendar years." Under section 644 as amended in 1945 petitioner could not be adjudged an habitual criminal, for that section now enumerates not only the prior convictions but also the substantive crimes, convictions of which can form the basis of a determination of habitual criminality; and the substantive crimes of which petitioner was actually convicted (violations of section 448a) are not so enumerated. (Violation of section 447a is so enumerated.)

It appears that petitioner has served a term exceeding the minimum of seven calendar years from the date of his delivery to the warden at Folsom State Prison and therefore, so far as his status as an habitual criminal is concerned, he is not as a matter of law ineligible for release on parole. Since, however, he has not presently been admitted to parole and the term of his sentence perdures, he is not entitled to an order of this court that he be released from custody, but

it is his right to have a request for parole considered and determined by the Adult Authority in the regular course of its proceedings and in the light of the law and the construction of the judgments as hereinabove declared.

The writ is discharged and the petitioner is remanded to custody.

Gibson, C. J., Shenk, J., and Carter, J., concurred.

SPENCE, J.—I concur with the conclusion that the writ should be discharged and that the petitioner should be remanded to custody, but I cannot concur with certain other conclusions reached in the majority opinion.

It is conceded by petitioner that the indictment uses the word "arson" in describing the offenses of which he stands convicted, and that it "purports to charge the crime of arson"; that he entered his plea of guilty to the crime of "arson as charged" in each of four counts of the indictment; that the judgments of conviction recited his "plea of guilty of arson as charged" in each of said four counts; and that he was sentenced on each of said four counts "for the crime of arson as charged." It is further conceded that at the present time, as well as at all times pertinent to this discussion, "the only statute defining the crime of arson is section 447a of the Penal Code enacted in 1929"; and that the offense denounced by section 448a of the Penal Code "is not arson."

While making these concessions, petitioner nevertheless relies upon an alleged defect in the allegations of the indictment to charge him with "arson" and contends that "the conviction and sentence of petitioner are void." The majority opinion does not sustain petitioner's contention *in toto* but does sustain it in part. The conclusion reached in the majority opinion is that the judgments of conviction cannot be permitted to stand as judgments of conviction for the crime of "arson" but that they may be permitted to stand as judgments of conviction for the crime denounced by section 448a of the Penal Code. While the majority opinion attempts to deny the implication, it necessarily follows from the reasoning of the majority opinion that if there were no catch-all section similar to section 448a of the Penal Code, upon which reliance is there placed, petitioner would be entitled to his absolute release in this proceeding.

The actual effect of the majority opinion is to permit

petitioner to use this proceeding on habeas corpus as a substitute for a direct attack upon the indictment by demurrer and as a means to strike down petitioner's convictions on four counts of "arson" (Pen. Code, § 447a) merely because of an alleged defect in the indictment. The extension of the use of habeas corpus to cover the situation presented by the record before us has been uniformly condemned by the prior decisions of this court.

In the early case of *Ex parte Williams*, 121 Cal. 328, this court said at pages 330-331 [53 P. 706] : ". . . the proceeding [habeas corpus] may not be made to subserve the office of a demurrer; and if the facts alleged squint at a substantive statement of the offense, no matter how defectively or inartificially they may be stated, or however confused and beclouded they may be rendered through intermingling them with immaterial or unnecessary averments, the writ will not lie. (*Ex parte Whitaker*, 43 Ala. 323; *Matter of Prime*, 1 Barb. 340.) " This rule has been consistently followed in the later decisions. (*In re Leach*, 215 Cal. 536 [12 P.2d 3] ; *In re Wilson*, 196 Cal. 515 [238 P. 359] ; *In re Kavanaugh*, 180 Cal. 181 [180 P. 533] ; *In re Ruef*, 150 Cal. 665 [89 P. 605] ; *In re Simmons*, 71 Cal.App. 522 [235 P. 1029] ; see, also, 13 Cal.Jur. 232.) The scope of inquiry upon habeas corpus into the sufficiency of an indictment "is limited" (*In re Leach, supra*, at p. 547) and "where an indictment purports or attempts to state an offense of a kind of which the court assuming to proceed has jurisdiction the question whether the facts charged are sufficient to constitute an offense of that kind will not be examined into on habeas corpus." (*In re Ruef, supra*, at pp. 666-667.)

As above stated, petitioner concedes that the indictment "purports to charge the crime of arson," and it is clear that the facts alleged do more than merely "squint at a substantive statement" of that offense. The sole defect to which attention has been called is the allegation in each of the four counts that petitioner did wilfully, unlawfully, feloniously, and maliciously set fire to and burn a certain "store building." Petitioner contends that as "arson" can be committed only by burning "any dwelling-house, or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto" (Pen. Code, § 447a), he is entitled to relief on habeas corpus.

In my opinion, there is no merit in petitioner's contention.

It may be assumed for the purpose of this discussion that the indictment is defective and that it would have been subject to direct attack (see, however; *People* v. *Russell,* 81 Cal. 616 [23 P. 418]), but such assumption does not determine the question before us in this proceeding. Upon direct attack, the prosecution would have had the opportunity of amending to allege the fact, if it were a fact, that each alleged "store building" was likewise used as a "dwelling-house." No such opportunity can now be afforded in the event that the judgment finding petitioner guilty of "arson" upon an indictment purporting to charge "arson," which judgment has long since become final, should be held in this proceeding to be insufficient as a judgment of conviction of "arson." It is a matter of common knowledge that many store buildings are likewise used as dwelling houses. The burning of such buildings has been held to constitute "arson" under statutes similar to our own. (*People* v. *Oliff,* 361 Ill. 237 [197 N.E. 777]; *Wade* v. *State,* 195 Ga. 870 [25 S.E.2d 712].) It therefore does not affirmatively appear from the face of the indictment that the offense charged did not constitute "arson," and, in my opinion, the allegations of each count were ample, under the rules set forth in the above-mentioned authorities, to withstand the attack now made in this proceeding on habeas corpus. To hold otherwise, as does the majority opinion, has the effect of declaring, contrary to the rule of the above-mentioned authorities, that the scope of the inquiry on habeas corpus into the sufficiency of the indictment is unlimited rather than limited.

It is significant to note that not a single authority cited in the majority opinion sustains the conclusion that the indictment in this case should be held insufficient in this proceeding to sustain the judgments of conviction on four counts of "arson." On the contrary, the reasoning found in the cases above cited clearly shows that the indictment here should be held sufficient for the purpose mentioned. As is said in *In re Simmons, supra,* 71 Cal.App. 522, at page 530: "It is claimed that the pleading states no offense known to the law because it fails to allege that the liquor contained one-half of one per cent or more of alcohol by volume, or that it was fit for use for beverage purposes. There is nothing in the complaint which tends to negative the idea that the liquor in petitioner's possession contained at least as much as one-half of one per cent of alcohol. The allegation that it contained 'more than one-third of one per cent alcohol by

volume' is entirely consistent with the fact that its alcoholic content was as much as or more than one-half of one per cent.'' So here, the allegations that petitioner burned four ''store buildings'' do not negative, and are entirely consistent with, the fact that such buildings may have likewise been used as ''dwelling-houses.'' Petitioner made no point at the time of his conviction in 1939 that he had not in fact committed four offenses of ''arson'' but, on the contrary, he pleaded guilty to each of the four offenses denominated in the indictment as ''arson.'' In this proceeding on habeas corpus he merely rests upon an alleged defect in the allegations of the indictment upon which he was convicted, and in my opinion, he should not be permitted to prevail.

The majority opinion alludes to the history of the offense called ''arson.'' It is clear, however, that since 1929 there has been but one offense known in this state as ''arson,'' being the offense defined as ''arson'' in section 447a of the Penal Code. In view of the express statutory definition of ''arson'' found in that section and in view of the fact that the indictment purported to charge the offense of ''arson'' and cannot be held in this proceeding to be insufficient to charge that offense, all reference to the early history of the offense called ''arson'' becomes immaterial in this discussion. Nor does the case of *In re Bausino,* 22 Cal.2d 247 [138 P.2d 297], lend support to the conclusions reached in the majority opinion. In that case there was no claimed defect in the indictment or information which charged petitioner with a violation of the State Narcotic Act. The only question there was whether petitioner's maximum term was six years or ten years, which question in turn was dependent, under the terms of the act, upon whether petitioner had suffered a prior conviction of a felony. (See Stats. 1929, p. 385, § 6 as amended by Stats. 1935, p. 2203, § 5b, at p. 2207.) The judgment of conviction was silent on this subject, but it appeared from the face of the record that petitioner had been charged with and had admitted such prior conviction. Under such circumstances, it was properly held that petitioner's maximum term was ten years rather than six years, despite the failure of the trial court to mention the prior conviction of a felony in the judgment of conviction. That case is in no way inconsistent with the above-cited authorities dealing with alleged defects in the information or indictment, and it sheds no light on the problem before us.

If petitioner may not prevail upon his technical claim relating to the sufficiency of the indictment, then he stands convicted of four primary offenses of "arson." He was also charged with, and he admitted, the following three prior convictions: (1) grand larceny in North Dakota; (2) burglary in California; and (3) grand larceny in the first degree in Minnesota. He was therefore adjudicated to be an habitual criminal. The question arises as to his eligibility for parole.

I cannot agree with the conclusion reached in the majority opinion that petitioner is now eligible for parole by reason of having served a term exceeding seven calendar years from the date of his delivery to the warden at Folsom. That conclusion is based upon the premise that petitioner does not stand convicted of the primary offense of arson, and that therefore petitioner falls within the class of persons covered by the second sentence of section 3048.5 of the Penal Code. In my opinion, petitioner does stand convicted of the primary offense of arson, which offense still remains one of the primary offenses upon which an habitual criminal adjudication may be based (see Stats. 1945, ch. 934, amending § 644, 3047, and 3048, and adding § 3048.5 of the Pen. Code). Under the present section 3048.5 (Stats. 1945, ch. 934) petitioner is therefore a person "heretofore adjudged" to be an habitual criminal and "who would have been adjudged or determined to be an habitual criminal under . . . Section 644 of said code as amended by this act . . ."; and the time at which such a convicted person may be eligible for release on parole is dependent upon whether he has suffered two or three prior convictions within the meaning of section 644 of the Penal Code. As the determination of this question does not involve an attack upon the habitual criminal adjudication but merely determines the effect of such adjudication in its relation to eligibility for release on parole, I agree that petitioner should be accorded the widest latitude in this proceeding in proving that one of the three prior convictions was for an offense which, if committed in this state, would not have constituted one of the felonies specified in section 644 of the Penal Code. (See concurring and dissenting opinion in *In re McVickers*, 29 Cal.2d 264, 281 [176 P.2d 40].) Petitioner has successfully assumed the burden of proving that fact in this proceeding. He has shown, and it is conceded, that his conviction of grand larceny in North

Dakota was upon an information in which the value of the property was definitely specified and the total value was affirmatively alleged as "making a total value of all property taken of $47.00." His North Dakota offense would have constituted only petit larceny rather than grand larceny if committed here, and, under the circumstances, he is therefore entitled to be treated as one who has suffered two rather than three prior convictions of felonies specified in section 644 in determining his eligibility for parole. This brings petitioner within the provisions of the first sentence of section 3048.5 of the Penal Code rather than the second sentence of said section as declared in the majority opinion.

As petitioner was sentenced on December 26, 1939, and it does not appear that he has served the minimum time required to make him eligible for a release on parole under the provisions of the first sentence of section 3048.5 of the Penal Code, I believe that the writ should be discharged and that petitioner should be remanded without any declaration that he has a present "right to have a request for parole considered and determined by the Adult Authority in the regular course of its proceedings."

Edmonds, J., and Traynor, J., concurred.