[Crim. No. 5254. In Bank. Dec. 18, 1951.]

In re ROY DRAKE, on Habeas Corpus.

Mento & Buchler and George K. Littlefield for Petitioner.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Gail A. Strader, Deputy Attorney General, for Respondent.

EDMONDS, J.—In his petition for a writ of habeas corpus, Roy Drake, an inmate of Folsom Prison, alleges that in 1943 he was sentenced to imprisonment on his plea of guilty to two charges of first degree robbery. Seven months later, he and three other convicts escaped. The following year, in Mississippi, he was sentenced to imprisonment for 100 years for robbery with firearms.

Drake asserts that as a prisoner of Mississippi he was subjected to brutal and inhuman treatment on a prison farm. According to his petition, in 1947 the Governor of Mississippi asked the California prison authorities whether they would accept Drake to complete his term of imprisonment from which he had escaped. California agreed to do so and forwarded extradition papers.

At the time of the issuance of these papers, Drake says, he was, without the advice of counsel and in the presence of several Mississippi prison guards, ordered to sign a document if he "knew what was good for him." This document, as set forth in his petition, constitutes an agreement "freely and voluntarily . . . to accompany San Quentin prison authorities as a prisoner from the Mississippi State Penitentiary." Drake alleges that he signed this document "without any intent of waiving any of his rights and only because he knew that he would receive a sadistic lashing by the guard if the document was not signed."

The extradition papers of California were honored by the Governor of Mississippi, who authorized the superintendent of the Mississippi State Penitentiary to release Drake into the custody of the California authorities. The authorization, as set forth in Drake's petition, reads: "This release to the California authorities is granted with the distinct understanding that in the event this prisoner is ever granted executive clemency of any kind in California or is ever released for any reasons from the San Quentin Prison, State of California, he will be delivered to authorities from the State of Mississippi for return to the Mississippi State Penitentiary, and it is expressly understood that the State of Mississippi will exercise its right to return this prisoner to the State of Mississippi in the event his release is ever contemplated." However, it does not appear that Drake entered into any agreement to return to Mississippi if and when released by the California authorities.

After his return to California, Drake was tried and convicted upon the charge of escaping from San Quentin. The Adult Authority fixed his term at a maximum of 12 years. Later he was transferred to Folsom Prison and informed that Mississippi had filed a "hold order" against him.

Drake says that, aside from the "hold order," he is eligible for parole. Requests to the Governor of Mississippi for withdrawal and dismissal of the "hold order," he alleges, have been denied upon the ground that his release from the Mississippi prison was an "indefinite suspension of sentence revokable at the will of the Governor."

The record in this proceeding includes a certified copy of the minutes of the Adult Authority which recite that Drake was, "Granted parole effective April 14, 1952 to go to family in Indiana subject to Hold." He here asks the court to adjudge the "hold order" to be void and direct the Adult Authority to disregard it. He takes the position that he is

not a fugitive from justice from Mississippi and, therefore, is not extraditable to that state. If extradited to Mississippi, he says, he would be subjected to cruel and inhuman punishment in violation of the due process clause of the Fourteenth Amendment of the federal Constitution.

By an answer and return to the petition, the attorney general declares that Drake is now lawfully imprisoned under a sentence which has not expired. For that reason, it is said, Drake is not now entitled to his discharge from custody. The allegations of Drake's petition are not denied. The state treats them as being insufficient to justify interference with the action of the Adult Authority.

■ Drake asserts that he is entitled to the relief asked by him because of the state's failure to deny the facts stated in his petition. However, even if those facts are considered as being true, no ground for issuance of the writ of habeas corpus is shown. Assuming that Drake would not be subject to extradition if sought, the petition still is premature and fails to state any grounds for present relief for he admits that he "is legally and lawfully imprisoned." The purpose of the writ of habeas corpus is to inquire into the legality of the detention. (Pen. Code. § 1473.) The detention being admittedly legal, no ground for issuance of the writ exists.

Drake argues, however, that his situation is analogous to the inquiry on habeas corpus into a prisoner's status as an habitual criminal as that status affects his rights to parole. But the inquiry in such a case directly concerns the legality of the detention under an adjudication as an habitual criminal. On the contrary, the "hold order" here questioned in no way affects Drake's right to parole under the statutes.

Under the conditional order made by the Adult Authority, Drake has no basis to litigate the right of Mississippi to imprison him. ■ The Adult Authority may alter, modify or revoke its order at any time before the specified effective date. "The situation here is that the action of the board is nothing more than a determination that it will, at a future date, release the prisoner on parole unless intervening circumstances should prompt the board to retain him in further custody." (*In re Allen*, 27 Cal.App.2d 447, 448 [81 P.2d 168].) Until the effective date of the order, Drake has no vested rights under it; the action of the Adult Authority heretofore taken neither grants nor deprives him of any rights whatsoever.

No present extradition proceedings are pending. Should

Drake be detained at some future date upon extradition proceedings, he may then apply for the writ of habeas corpus to test the legality of such detention. (Pen. Code § 1550.1.) Until that time, there is no detention which Drake can question by means of the writ. Whether Drake is subject to extradition, or whether his constitutional rights would be violated by extradition, are questions not now presented. Habeas corpus does not lie to challenge the validity of an anticipated future action nor to secure declaratory relief in advance thereof. (*Ex parte Rockwell*, 75 F.Supp. 702; *Boyce* v. *United States*, 52 F.Supp. 115, 116.)

The writ is discharged and the petitioner is remanded to custody.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

SCHAUER, Concurring and Dissenting.—I concur in the conclusion that the writ should be discharged. However, I dissent from the holding that the prisoner cannot in this proceeding question the correctness of the Adult Authority's determination to grant parole "subject to Hold." In my opinion petitioner at this time has the right to test the legality of the Adult Authority's recognition of the Mississippi "hold order." It is implicit in the action taken by the Authority that it accords validity and gives effect to such order; it has given consideration to that hold order in the action it has taken and it has refused to pass on petitioner's application independently of such order. It is true that petitioner has no vested right to the grant of parole effective April 14, 1952, but he does have the right to have the action which the Authority has taken, or may take, based upon correct legal grounds; he has the right to have the Authority consider and act on his application for parole excluding from their consideration the Mississippi hold order if it is invalid as he contends and prima facie shows.

Habeas corpus is the proper remedy for a prisoner who seeks, not release, but a direction to the Authority that in fixing the prisoner's term or considering his application for parole it should act under a correct view of the prisoner's status and his rights thereunder. The situation is analogous to that of a prisoner who has been erroneously committed as an habitual criminal, or erroneously committed as an habitual criminal with three rather than two prior convictions. Such

a prisoner, on petitioning for habeas corpus, is entitled to an opinion correctly declaring his rights and "The proper course to pursue is for the constituted authority to refix the sentence of the petitioner in accordance with the declaration of his rights as stated in . . . [such] opinion." (*In re Seeley* (1946), 29 Cal.2d 294, 303 [176 P.2d 24].) Similarly, where there is a question of such a prisoner's eligibility for parole, he is entitled to a declaration that "it is his right to have a request for parole considered and determined by the Adult Authority." (*In re Bramble* (1947), 31 Cal.2d 43, 54 [187 P.2d 411].) Likewise, petitioner here should be able to obtain a declaration (if on the merits he is entitled to it) that the Authority consider his case and act on it without consideration of the "hold order," which (it prima facie appears) is invalid because it was the result of coercion.