## S04A0856. FIELDING v. THE STATE.

(602 SE2d 597)

SEARS, Presiding Justice.

Appellant Robert Eugene Fielding appeals his convictions for murder and robbery,[1] resulting in a life sentence, claiming that trial counsel was ineffective and that the trial court erred in admitting prior transaction evidence. We have considered the record and conclude these enumerations are without merit. Having found the evidence sufficient to support appellant's convictions, we affirm.

The evidence of record shows that one night in May 1994, the victim, Mary Stewart, disappeared while working late at the Richmond County Department of Family and Children Services (DFACS). Her body was later found buried in a nearby landfill facility. Appellant supervised the night cleaning crew assigned to the DFACS office where the victim worked. Prior to the victim's disappearance, appellant had made efforts to determine the location of security cameras inside DFACS's office. Appellant's job duties included collecting trash from other workers and taking it to a dumpster in a trash cart. After the victim disappeared, blood stains were discovered on the trash cart. The stains were later determined to have been caused by both appellant's and the victim's blood. Fibers from the victim's clothing were also found on the trash cart. Only appellant had access to this trash cart, and he admitted to having control of it on the night of the victim's disappearance.

Appellant's duties also included activating the building's alarm system when his crew was finished cleaning. Appellant normally did not work past 9:00 p.m. On the night the victim disappeared, security records show that appellant's cleaning crew left the DFACS building at 9:15 p.m., but he did not activate the DFACS alarm system until 10:39 p.m. The following night, appellant failed to report for work.

Appellant possessed a key that gave him access to the DFACS trash dumpster. On the night of the victim's disappearance, the dumpster was heaped with trash bags. After the dumpster was emptied the following morning, police searched the compacted landfill area where the trash had been deposited. Body parts from the

---

[1] The crimes occurred on May 12, 1994. Appellant was indicted on November 8, 1994. The State announced its intention to seek the death penalty. A jury trial was held September 16-24, 1996, and appellant was found guilty on all charges. After the jury split on whether to impose a death sentence, appellant was sentenced to life in prison for malice murder and a consecutive twenty year term for robbery. Appellant filed a new trial motion on September 30, 1996, which was amended on March 25, 2003. The motion was denied on July 24, 2003. Appellant filed a notice of appeal on August 18, 2003, the appeal was docketed on January 29, 2004, and submitted for decision on the briefs.

victim were soon discovered. The area was excavated, and eventually 90 percent of the victim's body was recovered.

Two of the victim's rings were recovered from area pawn shops. The women who pawned the rings told police that on the night the victim disappeared, appellant had given them the rings as gifts. Another woman testified that on the night the victim disappeared, appellant showed her a watch and necklace. This woman later saw the victim's photo on a missing persons poster; in the photo, the victim wore the same watch and necklace. On the day of the victim's disappearance, appellant had no visible cuts or scratches, and had no limp. Later that night, witnesses observed cuts, scratches and bruises on appellant's arms and chest, as well as a deep puncture wound on his forearm. Appellant also was walking with a noticeable limp that night.

1. The evidence of record — though circumstantial — when construed most favorably to the verdicts, was sufficient for rational triers of fact to find appellant guilty of malice murder and robbery.[2]

2. The trial court did not err by admitting evidence of a previous murder and robbery committed by appellant. In 1969, appellant confessed to robbing a gas station late at night, then shooting and killing the attendant. When confessing, appellant said that he had killed the attendant in order to prevent him from identifying appellant. Appellant also said that he had not planned to rob the gas station, but had become "tempted" when he saw the attendant counting money.

Evidence of this prior crime was admitted over appellant's objection. Having reviewed the record, we conclude that the evidence was admitted for a proper purpose, i.e.: to show a connection or similarity between the prior act and the murder at issue here.[3] In both instances, appellant robbed unarmed persons, then killed them, thereby preventing later identification. In each instance, the victim was someone whom appellant knew was alone at their place of business. Appellant tracked both victims' movements, and both victims were attacked late at night. There was a sufficient similarity between the two acts so that proof of the former tended to prove the latter. Moreover, there is no doubt that appellant committed the prior act, as he confessed to it.[4] Finally, while a number of years elapsed between the prior transaction and the crime at issue here, we conclude the prior act's probative value, which showed a specific

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see OCGA § 24-4-6 (when a conviction is based on circumstantial evidence, the facts proved must exclude every reasonable hypothesis save that of guilt).

[3] See *Williams v. State*, 261 Ga. 640, 642 (409 SE2d 649) (1991).

[4] See *Williams*, 261 Ga. at 642.

course of conduct and particular pattern of behavior, was not outweighed by its prejudicial effect.[5]

3. Appellant claims trial counsel was ineffective for failing to object when several witnesses for the State — a crime scene expert, a forensic pathologist, and a forensic serologist — gave opinion testimony without having first been qualified as experts in their respective fields. We disagree.

In order to establish that counsel was ineffective, appellant must show both that counsel's performance was deficient and that the performance was prejudicial to the defense.[6] When ruling on a claim of ineffective assistance, this Court does not evaluate counsel's trial tactics and strategic decisions in hindsight.[7]

An expert witness is anyone who, through training, education, skill, or experience, has particular knowledge that the average juror would not possess concerning questions of science, skill, trade, or the like.[8] An expert witness may render an opinion within his area of expertise after the proper qualifications have been proven to the trial court.[9] If, after qualifying a witness as an expert but without a formal tender, counsel proceeds to ask for expert opinion evidence, the trial court has tacitly or impliedly accepted the witness as an expert.[10] Further, if the opposite party objects to the expert opinion and the trial court overrules the objection, then the court has impliedly accepted the witness as an expert.[11]

Here, the State's witnesses testified as to their credentials and were obviously qualified to testify as experts in their respective fields.[12] The witnesses were questioned as experts by the State, and thus were either tacitly or impliedly accepted as such by the trial court. It follows that any objection raised by appellant's counsel to such questioning would have been futile, and therefore cannot serve as the basis for a claim of ineffective assistance.

---

[5] See *Williams*, 261 Ga. at 642. Contrary to appellant's argument, the fact that a number of years elapsed between the two transactions does not automatically render the former inadmissible, but rather is but a factor to be weighed when determining whether potential prejudicial impact is outweighed by probative value. See *Gilstrap v. State*, 261 Ga. 798, 799 (410 SE2d 423) (1991); *Carter v. State*, 205 Ga. App. 885, 887 (424 SE2d 81) (1992).

[6] *Strickland v. Washington*, 466 U. S. 668, 688, 693-694 (104 SC 2052, 80 LE2d 674) (1984).

[7] *Strickland*, 466 U. S. at 690.

[8] OCGA § 24-9-67.

[9] See *Smith v. State*, 276 Ga. 97, 98-99 (575 SE2d 450) (2003).

[10] See *Stewart v. State*, 246 Ga. 70, 75 (268 SE2d 906) (1980); *In the Interest of C. W. D.*, 232 Ga. App. 200, 207-208 (501 SE2d 232) (1998).

[11] *Stewart*, 246 Ga. at 75.

[12] See *Watkins v. State*, 259 Ga. 648 (386 SE2d 132) (1989) (generally, nothing more is required to qualify as an expert than evidence that the person has been educated in a particular trade, science, or profession).

We have reviewed the other bases for appellant's claim of ineffective assistance, and find them to be without merit.[13]
*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 13, 2004.

*Garrett & Gilliard, Michael C. Garrett*, for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Madonna H. Little, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Julie A. Adams, Assistant Attorney General*, for appellee.

---

[13] These include claims that counsel failed to conduct an adequate forensic investigation, obtain adequate expert assistance, and labored under a conflict of interest due to his wife's earlier employment with the district attorney's office.