A08A1913. PERRY v. THE STATE.
(671 SE2d 290)

JOHNSON, Presiding Judge.

A jury found Kevin Ryan Perry guilty of aggravated assault. Perry appeals, arguing the trial court erred in excluding expert testimony relating to his justification defense. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence shows that 18-year-old Perry lived with his mother and Billy Mitchell, his mother's boyfriend. On August 30, 2005, Perry began arguing with his mother, and she told Mitchell to take Perry to his father's house. Screaming that he did not want to leave, Perry stabbed Mitchell several times with a knife, including in the hand, heart, chest, and abdomen.

An officer dispatched to the scene saw Perry walking near Mitchell's house with a torn shirt and blood on his hands and arms. Perry told the officer that he had stabbed Mitchell after Mitchell pushed him. Another officer found a bloody knife on Mitchell's kitchen counter.

Perry presented a justification defense at trial. He and his mother testified that Mitchell was the aggressor, punching and strangling him without provocation. According to Perry, when Mitchell began choking him, he pulled a knife from his pocket and stabbed Mitchell in self-defense. The jury, however, rejected Perry's defense and found him guilty of aggravated assault.

In his sole enumeration of error, Perry argues that the trial court erred in granting the state's pre-trial motion in limine and excluding the testimony of his expert, Vandiver Keller. "An expert witness is anyone who, through training, education, skill, or experience, has particular knowledge that the average juror would not possess concerning questions of science, skill, trade, or the like."[2] Expert testimony is admissible "where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman."[3] The trial

[1] See *Lott v. State*, 281 Ga. App. 373 (636 SE2d 102) (2006).

[2] (Footnote omitted.) *Fielding v. State*, 278 Ga. 309, 311 (3) (602 SE2d 597) (2004).

[3] (Punctuation and footnote omitted.) *Wright v. State*, 233 Ga. App. 358, 359 (1) (504 SE2d 261) (1998).

court exercises its discretion in admitting or excluding expert testimony, and we will not reverse that court's ruling absent an abuse of discretion.[4]

At the motion in limine hearing, Perry proffered testimony from Keller, a specialist in combat and defense training, who identified his expertise as "the justified use of deadly force" and the "dynamics of the confrontation." Keller anticipated testifying at trial about "ability, opportunity, and jeopardy, the three things that you have to have to justify the use of deadly force." Explaining these concepts, he asserted that before a person can legally use lethal force against an aggressor, the aggressor must have the ability, opportunity, and intent to cause death or great bodily injury. Keller further stated that the average lay person does not understand the factors underlying a potentially lethal confrontation or what combatants "go[ ] through in a battle."

Under OCGA § 16-3-21 (a), a person is justified in using lethal force if he reasonably believes such force is necessary to prevent death or great bodily injury to himself or others. The justification defense "is based on a 'reasonable man' standard of behavior."[5] And as previously found by our Supreme Court, an average juror generally can determine, without the aid of expert testimony, whether conduct allegedly taken by an individual in self-defense was necessary to protect against death or great bodily injury.[6]

The trial court reached a similar conclusion here. It excluded Keller's testimony after determining that his opinions about an aggressor's ability, opportunity, and harmful intent involved "matters that have an official sounding label to them, but . . . are common sense concepts . . . the jury could handle" without expert testimony. We find no error. Perry has not shown that these concepts implicated complex or mysterious areas of human response and behavior that required expert testimony.[7]

Perry also argues that Keller should have been allowed to testify about the amount of time "it takes to choke someone into unconsciousness." According to Perry, Keller's testimony that a person loses consciousness within "seconds" was crucial to his justification defense and claim of imminent danger. Perry, however, offered no evidence that he was aware of such timing when he stabbed Mitchell.

---

[4] Id.

[5] *Lott*, supra at 375 (3).

[6] *Weems v. State*, 268 Ga. 142, 144 (3) (485 SE2d 767) (1997) ("Whether, under the circumstances then existing, it was reasonable for Weems to believe that firing his gun was necessary to prevent his death or great bodily injury was not beyond the ken of the average juror.").

[7] See *Allen v. State*, 283 Ga. 304, 306-307 (3) (658 SE2d 580) (2008).

We thus fail to see how expert testimony on the timing issue would have aided the jury in assessing whether Perry reasonably believed force was necessary to prevent his own death or great bodily injury.[8]

On appeal, Perry notes that a law enforcement officer testified that a person loses consciousness during choking after approximately one minute, and he claims that Keller should have been allowed to dispute that testimony at trial. But the record shows that defense counsel elicited the officer's testimony on cross-examination, despite knowing that the trial court had excluded Keller's opinion, and counsel did not object to the testimony or ask at that point for permission to present contrary evidence through Keller. Given these circumstances, Perry cannot now complain about the officer's testimony.[9]

The trial court did not abuse its discretion in excluding Keller's testimony.[10] Accordingly, we affirm.

*Judgment affirmed. Barnes, C. J., and Phipps, J., concur.*

DECIDED DECEMBER 15, 2008.

*Richard K. Murray*, for appellant.

*Kermit N. McManus, District Attorney, Barry S. Minter, Assistant District Attorney*, for appellee.

---

[8] See *Nguyen v. State*, 271 Ga. 475, 476 (2) (520 SE2d 907) (1999) (expert testimony regarding defendant's cultural traditions regarding status and respect inadmissible to support claim that she killed husband in self-defense where "there was no evidence that individuals sharing appellant's cultural background would believe themselves to be in danger of receiving any physical harm as a result of . . . loss of status and disrespectful treatment").

[9] See *Ochoa v. State*, 252 Ga. App. 209, 211 (3) (555 SE2d 857) (2001).

[10] See *Weems*, supra.