**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**July 12, 2012**

# In the Court of Appeals of Georgia

A12A0010. WILSON v. THE STATE.                          AD-001C

ADAMS, Judge.

Steven Wilson appeals from the trial court's denial of his motion for new trial following his conviction on one count of "False Statement and Writing, Concealment of Facts" under OCGA § 16-10-20. We affirm for the reasons set forth below.

Viewed in the light most favorable to the verdict,[1] the evidence shows that on or about April 23, 2007, Wilson entered into a contract with Craig and Jennifer Aaron to renovate their home, included adding a second story to the existing ranch-style structure. The contract price was based on Wilson's estimate that the work would cost approximately $206,150. The false statement charge arises out of Wilson's

---

[1]See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Wilson does not contest the sufficiency of the evidence to support the verdict.

application for a building permit from Cobb County for the work he contracted to perform on the Aarons' home. Wilson listed himself as the property owner on the application, instead of the Aarons, and he described the work to be done as "repairs (repair brick repair cornish (sic)) raise ceiling" and listed the estimated construction cost at $10,000 despite the fact that the parties' contract reflects a cost in excess of $200,000. The building permit itself also lists Wilson as the owner of the property and contains a stamped notation of "repairs & reno, no expansion." Wilson signed that document before a notary indicating that all the information was true to the best of his knowledge.

The State presented evidence indicating that by understating the cost and scope of the building project on the permit, Wilson avoided having to comply with a number of county requirements including the submission of architectural plans, the completion of a structural engineering analysis and a review and approval of a site plan for the property. Additionally, he avoided requirements for obtaining separate electrical and mechanical permits that require specialized inspections by the county.

As the project continued, the Aarons came to question the quality of Wilson's work. And, indeed, the State presented evidence at trial that Wilson's work was not performed to code and that the Aarons' property was eventually condemned.

2

Additionally the costs exceeded Wilson's $206,000 estimate, and the Aarons came to believe that Wilson was overcharging them. A comparison of their invoices with those of another Wilson customer led Craig Aaron to conclude that both sets of invoices were "exactly the same." At that point, sometime in early 2008, the Aarons reported the matter to the police, leading to the charges in this case.[2]

1. Wilson contends that the trial court erred in failing to grant him a new trial on the ground that he received ineffective assistance of counsel. He asserts that his trial attorney was deficient in failing a) to present a defense based on agency in connection with the charge of false statement or writing; b) to call a witness to testify regarding the customs and practices of builders in Cobb County in applying for building permits; and c) to object to the expert opinion testimony of two of the State's witnesses.

In considering the trial court's ruling on Wilson's claims of ineffective assistance of counsel, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal

[2]In addition to the false statement charge, Wilson was charged with seven counts of theft by deception and one count of violating the Georgia Racketeer Influenced and Corrupt Organization Act, but the jury acquitted him of each of those charges.

3

principles to the facts." (Citation omitted.) *Handley v. State*, 289 Ga. 786, 787 (2) (716 SE2d 176) (2011). And

> [t]he two-prong test for determining the validity of a claim of ineffective assistance of counsel provided in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency.

(Citation and punctuation omitted.) *Bruce v. State*, 252 Ga. App. 494, 498 (2) (555 SE2d 819) (2001). "If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." (Citations omitted.) *Kendrick v. State*, 290 Ga. 873, 877 (4) (725 SE2d 296) (2012). Moreover, a strong presumption exists "that the performance of trial counsel falls within the wide range of reasonable professional assistance. The reasonableness of the conduct is viewed at the time of trial and under the circumstances of the case." (Citation and punctuation omitted.) *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004).[3]

---

[3] We note that during the sentencing hearing, the trial court told Wilson that his trial attorney did an "exceptional job" representing him and in getting him acquitted

4

(a) Wilson first asserts that his trial attorney was deficient in failing to raise an agency defense to the false statement charge, which alleged that Wilson

> falsely, in the application [for the building permit], listed himself as the owner of the residence and falsely listed that the work was primarily for repairs of a value of $10,000.00, when in reality the work included additions and was valued at approximately $200,000.00, causing the price of the permit to be lower than it should have been and causing lack of supervision or oversight, contrary to the laws of this State. . . ."

Wilson notes, however, that although he listed himself on the first page of the application as the property owner, he actually signed the application on the lines for "Signature of property owner or owner representative," and "Signature of applicant or applicant representative." He testified at the hearing on his motion for new trial that he listed himself as owner on the permit only because he was acting as the Aarons' representative in obtaining the permit, and he signed the application only in that representative capacity, although he conceded that he did not give this explanation at trial. Wilson's trial attorney testified at the motion hearing that he failed to pick up the language on the signature lines allowing for a signature by an "owner representative," but if he had he would have requested jury instructions on the

of the other eight counts.

5

law of agency because the issue would have been "a significant thing to argue before the jury." He said that he would have argued that "when Mr. Wilson signed this document he signed it as a representative of Mr. Aaron, and an agent of Mr. Aaron." The trial attorney stated that this omission was the most significant error he made at trial, and if he had it to do over again, agency would have been the center of his defense to the false statement charge.

But the trial attorney offered no explanation as to why or how the law of agency would have provided such a "significant" defense to the false statement charge. And Wilson's current counsel failed to articulate below, and makes no attempt to articulate on appeal, how the law of agency would have provided Wilson a defense to that charge. Even though Wilson may have been acting as the Aarons' agent in obtaining the permit and thus lawfully could have signed the permit as their representative, he, in fact, did not indicate on the form that he was signing in that capacity. Rather he identified himself as the owner of the property and signed the application in his individual capacity on the line where either the owner or the owner's representative was to sign, thus arguably reinforcing the appearance that he was the owner. Moreover, Wilson's status as agent provides no defense to misrepresentations he made regarding the scope and cost of the work to be performed.

Accordingly, Wilson failed to establish a reasonable probability that the outcome of his trial would have been different if his trial attorney had raised such a defense.

(b) Wilson next contends that his trial counsel was ineffective in failing to call Ron Roberts as a witness, even though Roberts was on his witness list.

Roberts testified at the motion hearing that he had known Wilson for approximately 20 years and thought Wilson's work was "straight up, straight arrow." He stated that Wilson was an engineer who knew how to get things done and that he trusted Wilson "implicitly." Roberts also testified that he sometimes signed his name as the owner on permit applications especially when property is owned by people out of state, and at times he would obtain an initial permit without a full set of plans just to get a project started.

Wilson's trial attorney testified that he made a decision not to call Roberts although he offered no explanation for that decision. He stated in hindsight, however, that after hearing Roberts testify at the motion hearing, he believed that Robert's testimony would have only strengthened Wilson's testimony regarding the custom and practice in the industry.

But "[t]he decision on which defense witnesses will be called is a matter of trial strategy and tactics and does not usually constitute ineffective assistance of counsel."

7

*Crawford v. State,* 302 Ga. App. 782, 784 (2) (691 SE2d 660) (2010). "Trial tactics and strategy, no matter how mistaken in hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them." (Citation and punctuation omitted.) *Gray v. State,* 291 Ga. App. 573, 579 (2) (662 SE2d 339) (2008). We cannot say that trial counsel's decision not to call Roberts was patently unreasonable.

In fact, Roberts admitted at the motion hearing that where a building project such as the Aarons' involved significant expansion to the space, he would have gotten a second permit and would have submitted a structural engineering report and an architectural report so that the county could have conducted the proper inspections. Because Wilson took none of those steps in connection with the Aarons' project, Roberts' testimony may actually have had a negative impact on Wilson's defense. Accordingly, Wilson has failed to establish that he was prejudiced by his trial counsel's failure to call Roberts as a witness.

(c) Wilson also contends that his trial counsel was ineffective in failing to object to the testimony of two prosecution witnesses: James Legg and Edwin McKenzie.

8

(i) James Legg is a certified real estate and tax appraiser who was hired by Cobb County to conduct an inspection and appraisal of the work done on the Aarons' property. Legg had worked as an appraiser for 41 years and testified that Cobb County had previously hired him on approximately 25 occasions to conduct similar appraisals. The State tendered Legg as an expert witness in the appraisal, structural evaluation and workmanship of residential real estate. Wilson's attorney conducted voir dire on Legg's qualifications, and during that voir dire, Legg also testified that he worked as a builder for approximately nine years from 1981 to the early 1990's and built approximately 20 homes over that time. Following voir dire and further questioning by the trial court, Legg was admitted as an expert in the proffered areas without objection.

Wilson does not contend that Legg was not qualified as an expert in these areas; rather, he asserts that his trial attorney should have objected to Legg's testimony regarding the process of obtaining building permits because Legg had not been a builder since 1990. But Legg's testimony regarding building permits was not opinion testimony; it was factual testimony about how structural engineering reports and architectural plans figure into the permitting process and about the inspections required in connection with a building permit obtained with such documents. Wilson

9

has not demonstrated that Legg rendered any opinion regarding the building permit in this case. That Legg's knowledge of building permits may have been outdated or limited would have been a proper subject for cross-examination, but it would not provide a basis for excluding such testimony, especially in light of Legg's 41 years of experience in real estate and his qualification as an expert in structural evaluation and workmanship. Accordingly, Legg cannot establish that his attorney was deficient for failing to object to such testimony. "Failure to make a meritless or futile objection or motion cannot be evidence of ineffective assistance." (Citation, punctuation, and footnote omitted). *Hall v. State,* 292 Ga. App. 544, 553 (6) (a) (664 SE2d 882) (2008).

(ii) Edwin McKenzie had 25 years of experience as a general residential contractor and testified that he had worked in many trades, learning "any facet of the construction area that [he] could," but he had recently left the field for health reasons. McKenzie helped the Aarons locate the property at issue in this case and acted as their real estate agent in purchasing it. He drew the sketches of the proposed work on the property that were attached to the Aarons' contract with Wilson and upon which Wilson based his estimate. He offered testimony regarding the building permit in this

case and the requirements for obtaining a building permit for the scope of the work actually performed on the Aaron's property.

Wilson contends that McKenzie's evidence was expert testimony and that his trial counsel was ineffective in failing to object to the State's failure to qualify McKenzie as an expert.

> An expert witness is anyone who, through training, education, skill, or experience, has particular knowledge that the average juror would not possess concerning questions of science, skill, trade, or the like. An expert witness may render an opinion within his area of expertise after the proper qualifications have been proven to the trial court.

(Footnotes omitted.) *Fielding v. State*, 278 Ga. 309, 311 (3) (602 SE2d 597) (2004). And where a witness's qualifications are established, he does not have to be formally tendered and accepted as an expert in order to give expert opinion testimony:

> If, after qualifying a witness as an expert but without a formal tender, counsel proceeds to ask for expert opinion evidence, the trial court has tacitly or impliedly accepted the witness as an expert. Further, if the opposite party objects to the expert opinion and the trial court overrules the objection, then the court has impliedly accepted the witness as an expert.

(Footnotes omitted.) Id.

11

McKenzie testified as to his own credentials: he had 25 years in the residential construction business and had tried to educate himself in all aspects of home construction. See Id. at n. 12 (citing *Watkins v. State,* 259 Ga. 648 (386 SE2d 132) (1989) for the proposition that "generally, nothing more is required to qualify as an expert than evidence that the person has been educated in a particular trade, science, or profession"). McKenzie also had prepared the plans for the Aarons' home renovation, given his own estimate for the project, and inspected Wilson's work; thus, he had particular knowledge of the property and the proposed work in this case.

Wilson has failed to establish that McKenzie's credentials as an expert in residential construction would have not withstood voir dire. For example, he has not demonstrated that McKenzie did not have sufficient experience in obtaining building permits, in Cobb County or elsewhere, to qualify as an expert in that area. Moreover, to the extent the trial court allowed the State to question McKenzie as an expert, it appears that the court either tacitly or impliedly accepted him as an expert in the area. Id. at 311 (3). Thus, because Wilson has failed to establish that his trial attorney could have raised a valid objection to McKenzie's qualifications as an expert, he cannot show that his counsel was ineffective in failing to object. Id.

12

2. Wilson next argues that the trial court erred in ordering restitution in the amount of $350,000 for a violation of OCGA § 16-10-20.

After the jury announced the verdict, the trial court allowed Wilson and his attorney to confer as to whether they wished to proceed to sentencing that day or wait for pre-sentence investigation. Wilson chose to proceed with sentencing, and the State presented testimony from Craig Aaron regarding the financial losses he had suffered due to the problems with his house and the resulting condemnation and foreclosure. Wilson presented no evidence. During the ensuing argument, the State asked for restitution to the Aarons in the amount of $750,000, arguing that if Wilson had not falsified the building permit, he would have been required to submit a structural engineering report, which along with the county's inspections, would have prevented the damage to the house. Wilson's counsel did not object to a consideration of restitution at that time, nor did he ask for the opportunity to present evidence on the issue. He did argue, however, that restitution was not appropriate because Wilson was convicted only of making false statements but was acquitted of other theft and RICO charges. He argued that at most, the sentence should include up to the maximum $1,000 fine under OCGA § 16-10-20, but not restitution.

After hearing argument and evidence, the trial court fined Wilson $1,000 and sentenced him to the maximum sentence of five years, with two to serve and the balance on probation. The trial court stated that, applying the factors under OCGA § 17-14-10, it was ordering Wilson to pay the Aarons restitution in the amount of $350,000, representing the $100,000 down payment the Aarons placed on the house, and the $250,000 they paid Wilson to work on it. The trial court stated that considering "everything that flowed" from Wilson's false statements on the permit application, "it is hard to imagine a case where a false statement is more significant," and he could not imagine more damage to someone's home than existed at the Aaron's house. In response, Wilson's attorney stated that he was not expecting a sentence other than a fine, and he moved the court to sentence Wilson as a First Offender, which the trial court denied.

Wilson contends on appeal that the trial court erred in ordering restitution because: a) restitution is not available under OCGA § 16-10-20; b) even if restitution were available, the trial court erred in making the award without a hearing and advance notice; and c) even if restitution were available, the trial court applied an incorrect measure of damages.

On appeal this Court reviews the record "to determine whether each party has met his or her specified burden and whether a restitution award was supported by the preponderance of the evidence." (Citation and punctuation omitted.) *In the Interest of E. W.,* 290 Ga. App. 95, 96 (2) (658 SE2d 854) (2008). And pursuant to the restitution statute, with certain exceptions not applicable in this case, "a victim of property damage is entitled to all special damages which a victim could recover against an offender in a civil action based on the same act or acts for which the offender is sentenced." *Mayfield v. State,* 307 Ga. App. 630, 631 (2) (b) (705 SE2d 717) (2011). See also OCGA § 17–14–2 (2) (defining "damages" for purpose of restitution statute).

(a) Wilson first contends that the trial court erred in ordering restitution to the Aarons based upon his conviction under OCGA § 16-10-20. He notes that the Eleventh Circuit Court of Appeals has determined that "the false statement statute was enacted . . . for the protection of the state itself—not private parties," and thus that no private cause of action arose from the statute. *Pelletier v. Zweifel*, 921 F.2d 1465, 1512 n. 83 (11th Cir. 1991). Although he contends that this prevents an award of restitution in favor of the Aarons, this argument ignores the law of restitution in

15

this State, which defines a victim as anyone who suffers damages caused by the defendant's unlawful act:

> Under OCGA § 17-14-2(9), for purposes of restitution a "victim" is defined as any "[n]atural person or ... [a]ny firm, partnership, association, public or private corporation, or governmental entity suffering damages caused by an offender's unlawful act...." This definition of "victim" demonstrates that the purpose of restitution is not only to make the victim whole, but also to prevent the offender from shifting the costs of his conduct to third parties. Accordingly, a court may order an offender to make restitution to any third party who has incurred or will incur expenses as a result of his illegal acts.

(Citations omitted.) *Adams v. State*, 291 Ga. App. 681, 684 (3) (662 SE2d 782) (2008), disapproved on other grounds *Turner v. State*, 312 Ga. App. 799, 804 (2) n. 15 (720 SE2d 264) (2011).

Craig Aaron's testimony demonstrated that his wife and he suffered damages due to the lack of oversight of Wilson's work. The evidence at trial directly linked this lack of oversight to Wilson's misrepresentations on the building permit application, and demonstrated that if he had submitted an application that accurately reflected the extent of the work to be performed, more safeguards would have been in place, which would have prevented the extent of the damage. Indeed, the

16

prohibition against false statements in matters of government jurisdiction under OCGA § 16-10-20 can only have been intended to prevent damage such as that suffered by the Aarons. Accordingly, the trial court could properly order that restitution be made directly to the Aarons even if they technically were not the direct victims of the crime. See e. g. *Adams v. State*, 291 Ga. App. at 684 (3) (approving restitution award to charitable institution that covered expenses of victim of cruelty to persons over the age of 65 under OCGA § 16-5-100); *Jackson v. State,* 198 Ga. App. 261, 263 (5) (401 SE2d 289) (1990) (approving award of restitution against defendant convicted of vehicular homicide in favor of driver of other car involved in collision, who was injured as a direct result of the collision, even though driver was not direct victim of the crime). Cf. *Smith v. State*, 148 Ga. App. 634, 635 (10) (252 SE2d 62) (1979) (affirming award against defendant convicted of false swearing under OCGA § 16-10-71 for misrepresenting in closing affidavit that all construction suppliers had been paid; court ordered payment of restitution to ensure that existing liens on property were removed and materialmen were paid in full).[4]

---

[4] We note, however, that unlike a charge of false statement under OCGA § 16-10-20, Georgia recognizes a private cause of action under OCGA § 51-1-6 for a claim of injury due to "false swearing." *Peters v. Imperial Cabinet Co.*, 189 Ga. App. 337, 338 (1) (375 SE2d 635) (1988).

(b) Wilson next asserts that the trial court erred in failing to give him advance notice and to hold a separate restitution hearing.

Where, as here, the parties do not agree in advance to the amount of restitution, the trial court sets a date for a hearing to determine restitution. OCGA § 17-14-7. The trial court gave Wilson and his attorney a choice of when they wanted to hold the sentencing hearing in this case, and they opted to proceed the same day as the jury announced its verdict. Although Wilson's trial attorney indicated that he was not expecting an award of restitution, he did not object to that award; he did not present or request to present evidence on the issue of restitution at the time; nor did he request a separate hearing on the issue of restitution. Accordingly, we find that Wilson "has waived any error in the decision of the trial court to decide the question of restitution as a part of the sentencing hearing, rather than in a separate and distinct hearing." (Citation omitted.) *Futch v. State*, 314 Ga. App. 294, 298 (3) (723 SE2d 714) (2012). See also *Ezebuiro v. State,* 308 Ga. App. 282, 285 (2) (a) (707 SE2d 182) (2011).

(c) Wilson also argues that the trial court applied an incorrect measure of damages in crafting the restitution award in this case.

18

"'Damages' means all special damages which a victim could recover against an offender in a civil action . . . ." OCGA § 17-14-2. The State bears the burden of demonstrating "the amount of the loss sustained by a victim as a result of the offense," OCGA § 17-4-7 (b), and the amount of restitution ordered by the trial court "may be equal to or less than, but not more than, the victim's damages." (Citation and punctuation omitted.) *In the Interest of E. W.,* 290 Ga. App. at 97 (3). The offender has the burden of demonstrating his financial resources and the financial needs of his dependents. OCGA § 17-4-7 (b). The trial court resolves any disputes as to the amount or type of restitution and determines restitution by a preponderance of the evidence based upon a number of statutory factors. Id. See also OCGA § 17-4-10.

Here, the Aarons essentially suffered the entire loss of use of their home, and the trial court determined that these damages flowed from Wilson's false statement which allowed Wilson to skip the requirements for structural engineering and architectural reports on the project and to avoid county inspections, which would have avoided or detected problems as they arose. Considering the testimony from the trial and from the sentencing hearing, we conclude that the trial court's award of $350,000 was supported by a preponderance of the evidence.

*Judgment affirmed. Barnes, P. J.,concurs. McFadden, J., concurs fully in Division 1 (b) and (c) and Division 2 but concurs in judgment only as to Division 1 (a).*