**THIRD DIVISION**
**BARNES, P. J.,**
**BOGGS and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

June 17, 2014

# In the Court of Appeals of Georgia

A14A0530. GRAF v. THE STATE.

BRANCH, Judge.

On appeal from her conviction for arson and possession of cocaine and marijuana, Pamela Graf argues that the evidence was insufficient as to the arson count and that the trial court erred when it joined the arson and cocaine cases for trial, when it limited a defense expert's testimony, and when it failed to hold a restitution hearing. We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004) (citation omitted). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the

prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979) (citation omitted).

So viewed, the record shows that at 4:30 a.m. on January 18, 2009, the Forsyth County Fire Department was called to a fire at a house owned by Graf. No one was home at the time of the fire, which completely destroyed the house. After Graf's father arrived at the scene, he gave firefighters Graf's contact information, but she was not reached until that afternoon, when she told the county fire investigator that she was in Washington, D.C. for the inauguration of President Obama and that she believed that her house might have been burned as a result of her support for the president. An arson investigator hired by State Farm Insurance concluded that the fire was "incendiary," or intentionally set, with gasoline used as an accelerant. A State Farm adjuster noted the presence of "indicators of possible insurance fraud" including the occurrence of the fire after 11:00 p.m., the racial slurs found sprayed on the boundary fence of the property, and the unexplained absence of Graf, her children, and the family cats at the time of the fire. Both the county investigator and the State Farms adjuster noted that Graf was unusually unconcerned with and unemotional about her loss.

In an interview with the fire chief two days later, Graf could not specify the time and day at which she left her house, but said that she and her companion, Steve Strobel,[1] had traveled to Washington in Strobel's van, sleeping in the van on the way and arriving at 3 p.m. on January 18. Strobel's cell phone records showed, however, that the couple had remained at or around his home in Winder as late as 2:28 a.m. on the morning of the 18th; that they had departed Winder at some point after that, eventually arriving in Charlotte, North Carolina by 10:15 a.m. on the 18th; and that Strobel remained in the Charlotte area through the afternoon of the 18th, after which they returned to Winder by 5:46 p.m. on the 19th. A search warrant executed on the temporary residence Graf occupied after the fire also recovered credit card receipts from a motel in Charlotte for the night of the 18th. A clerk testified that the credit card had been presented in person, and the car listed on the registration card was the same model as that in which Graf arrived at the search of the temporary residence. A partially smoked marijuana cigarette was found inside the residence, and 3.4 grams of cocaine was found in the pocketbook Graf was carrying when she was arrested for marijuana possession.

---

[1] We affirmed Strobel's arson conviction last year. See *Strobel v. State*, 322 Ga. App. 569 (745 SE2d 796) (2013).

Although Graf did not mention anything to investigators about moving items out of her house, a search of Strobel's residence recovered clothing, jewelry, furniture and documents belonging to Graf, including her children's medical and school records that a police officer testified were of the type usually lost in a fire. Storage units rented to Strobel were substantially filled with Graf's remaining possessions, including household items, furniture, wardrobe boxes, and family mementos. Dishes had been wrapped in newspaper dated two or three days before the fire, and mail postmarked as late as January 16th was also found. Graf's son testified at trial that at a restaurant dinner a few days after the fire, Graf told her children to order whatever they wanted "because the insurance would pay for" the dinner and gave each of them a large garbage bag of possessions, including childhood mementos. Graf's son and daughter both testified at trial that items present in the now-destroyed house at Christmas 2008 were found in Strobel's home and in the storage units. Although she had not boarded any of her five cats during a New Year's trip to Tybee Island, Graf boarded three of them on January 17, the day before the fire; took the fourth cat later that day to Strobel's house; and left her garage door open for the fifth.

Graf's ex-husband testified that although Graf had received a lump sum of approximately $220,000, not including alimony, in connection with the couple's

4

divorce in June 2005, Graf was complaining about a lack of money six months afterward. Graf's alimony payments stopped in June 2008, six months before the fire. Graf's financial advisor testified that Graf withdrew about $95,000 from her annuity account between December 2007 and December 2008, reducing that account's value (together with depreciation) from $129,000 to $14,000. Graf had lost custody of her children due to her drug habit, which was estimated to cost her up to $100 per day, or more than $36,000 per year. The State Farm adjuster also testified that Graf had made three previous claims, two for stolen jewelry and one for a sewage overflow in her basement; that she had received a payment of $5000 for each jewelry claim and that State Farm had also paid to have the basement remodeled; and that items described as stolen or destroyed in each of these claims were later recovered in Strobel's home and storage units.[2] In the aftermath of the fire, Graf received $7500 as an advance on the loss of her house's contents and $3,535.50 as payment for living expenses. State Farm also paid the house's outstanding mortgage balance of $201,357.01 to the mortgage holder.

---

[2] Graf had asked State Farm to "allow me to grieve at my own pace with the emotionally daunting job of going through all of" the belongings supposedly ruined in the flooding incident, including the "gut-wrenching" task of discarding the christening gowns later found unharmed.

Graf was charged with possession of cocaine, possession of one ounce or less of marijuana, and arson. Before trial, the State moved to have the drug cases and the arson case consolidated for trial. After a hearing, the trial court granted the motion. After a jury found Graf guilty on all three counts, she was convicted and sentenced to 30 years with 12 to serve. Her motion for new trial was denied.

1. Although Graf attacks the evidence against her as circumstantial, arson "can seldom be established by positive testimony," and "the force to be given" to circumstances corroborating a defendant's guilt is a question for the jury rather than this Court. *Wade v. State*, 195 Ga. 870, 877 (3) (25 SE2d 712) (1943) (citation omitted). The evidence outlined above, though circumstantial, authorized the jury to conclude that Graf knowingly damaged her house, which was both mortgaged and insured, by means of fire. As such, the evidence was sufficient to sustain Graf's conviction for arson in the first degree. See OCGA § 16-7-60 (a) (1), (2), (3) (defining first-degree arson as, "by means of fire or explosive," knowingly damaging a "dwelling house" in which any other person has a security interest or which is insured "and such loss or damage is accomplished without the consent of both the insurer and the insured"); *Wade*, 195 Ga. at 877 (3); *Jackson*, supra.

6

2. Graf also argues that the trial court erred when it joined her drug charges to her arson case. We disagree.

> Two or more offenses may be joined in one charge, with each offense stated in a separate count, when the offenses . . . (a) are of the same or similar character, even if not part of a single scheme or plan; *or* (b) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

*Dingler v. State*, 233 Ga. 462, 463 (4) (211 SE2d 752) (1975) (citation and punctuation omitted; emphasis supplied). We review a trial court's decision to join offenses as "parts of a single scheme or plan" only for an abuse of discretion. *Simmons v. State*, 282 Ga. 183, 185 (4) (646 SE2d 55) (2007) (citation omitted).

Here, the evidence showed that Graf possessed drugs at the time she was arrested at her temporary residence, and also authorized a conclusion that Graf was a drug addict in need of money when she burned down her house for the purpose of collecting the proceeds of her State Farm insurance policy on the house. "While motive is not an essential element in the proof of the crime of arson, the State is entitled to present evidence to establish that there was a motive." *Stephens v. State*, 214 Ga. App. 183, 186 (5) (447 SE2d 26) (1994) (citation and punctuation omitted). Evidence of Graf's drug habit was admissible to prove her motive for burning down

7

her own insured house, and the evidence and law of drug possession "was not so complex or confusing as to require . . . severance." *Wilcox v. State*, 271 Ga. 544, 546 (2) (522 SE2d 457) (1999) (citations omitted). It follows that the trial court did not abuse its discretion when it joined the drug possession charges to the arson charge for purposes of trial. Id. (trial court did not err in joining drug possession charges to murder charge when the two were part of a single plan).

3. Graf also argues that the trial court erred when it excluded hearsay testimony from her expert as to an out-of-court conversation he had with the engineer who conducted the electrical portion of the investigation into the fire's cause and origin. We disagree.

The record shows that although the State objected to the defense expert's account of a conversation he had with the engineer concerning that engineer's report as hearsay, the trial court eventually excluded the evidence not on that ground, which it repeatedly rejected, but because Graf's failure to prepare a written version of her expert's report precluded her from introducing any oral portions thereof under the reciprocal discovery rule. See OCGA § 17-16-4 (b) (2) (a defendant seeking to introduce any oral portions of a report "shall reduce all relevant and material oral portions of such report to writing and shall serve opposing counsel with such portions

no later than five days prior to trial"). On appeal, Graf has asserted no error as to this specific ruling, with the result that she has abandoned any argument as to it. *Kramer v. Yokely*, 291 Ga. App. 375, 383 (3) (662 SE2d 208) (2008) (appellant was deemed to have abandoned an assertion of error when he did not sufficiently specify what the error was).

Even if the trial court had ruled as Graf claims it did, moreover, Graf failed to proffer the relevant excluded testimony at the hearing on her motion for new trial.

> Where the error alleged is that certain evidence has been wrongfully excluded, the rule is well settled that there must have been a proffer or offer of a definite sort so that both the trial court and the appellate court can know whether the evidence really exists. In the absence of such a proffer, the assignment of error is so incomplete as to preclude its consideration by this court.

*Holder v. State*, 242 Ga. App. 479, 482 (5) (529 SE2d 907) (2000) (citations omitted). For these reasons, this assertion of error fails.

4. Finally, Graf argues that because no separate restitution hearing was held, and because no evidence was presented as to restitution at the sentencing hearing, the trial court's order granting State Farm restitution was erroneous. We disagree.

As a preliminary matter, nothing in OCGA § 17-14-10 mandates a separate hearing on restitution. Subsection (a) of the statute provides that a trial court ordering restitution "shall consider" factors including the offender's "financial resources" (including earnings and obligations), as well as "the amount of damages" suffered by the victim, the "goal[s]" of restitution and rehabilitation, and "the period of time during which the restitution order will be in effect." OCGA § 17-14-7 (b) provides that "[a]ny dispute as to the proper amount or type of restitution shall be resolved by the ordering authority by the preponderance of the evidence," with "[t]he burden of demonstrating the amount of the loss sustained by a victim as a result of the offense" resting on "the state." Finally, this Court has held that a trial court is not required "to make written findings when ordering an offender to make restitution." *McCart v. State*, 289 Ga. App. 830, 832 (1) (658 SE2d 465) (2008).

Although Graf cites *Watts v. State*, 321 Ga. App. 289 (739 SE2d 129) (2013), for the proposition that a trial court errs when it fails to hold a separate restitution hearing, Graf does not assert or show that she asked for such a hearing, and has thus "waived any error in the decision of the trial court to decide the question of restitution as a part of the sentencing hearing, rather than in a separate and distinct hearing."

10

*Wilson v. State*, 317 Ga. App. 171, 180 (2) (b) (730 SE2d 500) (2012) (citations and punctuation omitted).

This record shows, moreover, that at the sentencing hearing, the trial court ordered restitution "to be paid, joint[ly and several[ly] with Mr. Strobel," in the amount of $212,000. The trial court's figure of $212,000 was based on evidence introduced at trial showing the amount of payments made by State Farm to the mortgage holder as well as to Graf herself. After noting Graf's additional responsibility for her attorney fees, the trial court also stated at the sentencing hearing: "I'll give her a sixty-day grace period before she has to begin to pay. And then I'm going to do a rate of pay of no less than [$250] a month. And she'll never get it all paid, but at least there will be a minimum amount of pay there." On this record, this case is distinguishable from *Watts*, in which we noted the State's failure to point out any portion of the record as supporting the restitution award, and which held only that a trial court errs when it fails to consider the factors laid out in OCGA § 17-14-10 (a) before making a restitution award. 321 Ga. App. at 295 (3) (vacating and remanding for further proceedings as to restitution). By contrast, this record shows that the trial court considered all the factors laid out in OCGA § 17-14-10 (a) and that it based its restitution award on competent evidence proving the amount granted by a

11

preponderance of that evidence. *Wilson*, 317 Ga. App. at 180-181 (2) (c) (affirming order of restitution as to homeowners' loss of use resulting from contractor's false statement as supported by a preponderance of the evidence).

*Judgment affirmed. Barnes, P. J., and Boggs, J., concur*.