**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BROWN and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 13, 2023**

# In the Court of Appeals of Georgia

A23A1115. LAVALLEY v. THE STATE.

MARKLE, Judge.

A jury convicted Timothy J. Lavalley of aggravated child molestation, aggravated sodomy, incest, and two counts of child molestation. Lavalley now appeals from the conviction and from the trial court's denial of his motion for new trial, contending the trial court erred by allowing a child witness to testify outside of Lavalley's physical presence. Finding no error, we affirm.

Viewed in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), the evidence at trial showed that the victim, B. J., is Lavalley's biological daughter. Lavalley began inappropriately touching B. J. when she was five, and showed her pornographic videos. Lavalley repeatedly

sexually abused B. J. when she was between the ages of five and twelve, ultimately escalating to anal and vaginal penetration.

At trial, although B. J. was able to testify about neutral topics, she became non-responsive when asked about the details of Lavalley's abuse. The State moved to allow B. J. to testify outside of Lavalley's physical presence via one-way closed circuit television. Following an evidentiary hearing outside the presence of the jurors, the trial court granted the motion. Thereafter, B. J. testified from another courtroom by closed circuit television, allowing Lavalley, the jurors, and the trial court to view her demeanor and hear her testimony in real time, although she could not see them.

The jury ultimately found Lavalley guilty of aggravated child molestation, aggravated sodomy, incest, and two counts of child molestation. Lavalley filed a motion for new trial, raising the issue addressed in this appeal. Following a hearing, the trial court denied the motion, and this appeal followed.

In a single enumeration of error, Lavalley argues that the trial court abused its discretion by allowing B. J. to testify outside of his physical presence under OCGA § 17-8-55. We discern no error.

The Sixth Amendment to the United States Constitution affords criminal defendants the right to confront the witnesses against them. However, it is well-

2

settled that the right to face-to-face confrontation is not absolute. *Maryland v. Craig*, 497 U. S. 836, 844 (II) (110 SCt 3157, 111 LE2d 666) (1990); see also *Zepp v. State*, 276 Ga. App. 466, 469 (4) (a) (623 SE2d 569) (2005), overruled on other grounds by *State v. Lane*, 308 Ga. 10, 23-24 (838 SE2d 808) (2020). But,

> [t]hat the face-to-face confrontation requirement is not absolute does not, of course, mean that it may easily be dispensed with. . . . [O]ur precedents confirm that a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured.

*Craig*, 497 U. S. at 850 (II).

Here, Lavalley does not take issue under the reliability prong of the test.[1] Rather, he contends that the trial court erred by finding that the State's showing of necessity was adequate.

In *Craig*, the Court held that the State's "interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify

---

[1] The reliability prong is satisfied where the child witness testifies under oath and submits to a thorough cross-examination while under the observation of the judge, jury, and the defendant. *Craig*, 497 U. S. at 857 (III).

the use of a special procedure that permits a child witness" to testify outside the defendant's presence. 497 U. S. at 855 (III). The Court further instructed that

> [t]he requisite finding of necessity must of course be a case-specific one: The trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify. The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant. . . . Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than de minimis, i.e., more than mere nervousness or excitement or some reluctance to testify[.]

(Citations and punctuation omitted.) Id. at 855-856 (III).

Turning now to the procedure set forth under OCGA § 17-8-55, that statute defines a child as "an individual who is under 17 years of age." OCGA § 17-8-55 (a). Under OCGA § 17-8-55 (d), a trial court

> may order a child to testify outside the physical presence of the accused, provided that the court finds by a preponderance of the evidence that such child is likely to suffer serious psychological or emotional distress or trauma which impairs such child's ability to communicate as a result of testifying in the presence of the accused.

4

In determining the issue, the trial court is required to hold an evidentiary hearing, and, under a preponderance of the evidence standard, "may consider any one or more of" such circumstances as the trial court found applicable here:

(1) The manner of the commission of the offense being particularly heinous or characterized by aggravating circumstances;

(2) The child's age or susceptibility to psychological or emotional distress or trauma on account of a physical or mental condition which existed before the alleged commission of the offense;

(3) At the time of the alleged offense, the accused was:

(A) The parent, guardian, legal custodian, or other person

responsible for the custody or care of the child at the relevant

time; . . .

(4) The alleged offense was part of an ongoing course of conduct committed by the accused against the child over an extended period of time; . . .

(8) A threat, express or implied, of the incarceration of a parent, relative, or guardian of the child, the removal of the child from the family, or the dissolution of the family of the child if the child were to report the incident to any person or communicate information to or cooperate with

5

a court, grand jury, prosecutor, police officer, or law enforcement office concerning the incident has been made by or on behalf of the accused;

. . .

(11) According to expert testimony, the child would be particularly susceptible to psychological or emotional distress or trauma if required to testify in open court in the physical presence of the accused.

OCGA § 17-8-55 (c), (d) (1), (2), (3) (A), (4), (8), (11).

Here, the record reflects that B. J. initially presented as a communicative witness until the prosecutor's examination turned to specific questions regarding Lavalley's abuse, at which point, she became non-responsive. She stated that she was not ready to testify in response to the prosecutor's query. She then asked to take a break without having responded to any questions regarding the details of the abusive acts — even after the trial court attempted to accommodate her by allowing her to handwrite her responses to the prosecutor's questions, which would then be projected on a screen to the jury. After the recess was extended at B. J.'s request, the State moved to allow her to testify by one-way closed circuit television under OCGA § 17-8-55, to which Lavalley objected.

The trial court initially denied the motion, and when B. J. was placed back on the stand, she indicated that her difficulty in testifying was due to her father's

6

presence. The State attempted to facilitate B. J.'s ability to testify by having her use anatomical dolls to reenact the abuse. However, she again became non-responsive when the State asked specific questions about Lavalley's acts. At which point, the trial court excused the jury from the courtroom and permitted the State to renew its oral motion under OCGA § 17-8-55.

The trial court then heard testimony from B. J.'s aunt, who stated that she had been with B. J. during the prior recess, and that B. J. was breathing heavily, shaking, and complaining of chest pains. She further testified that B. J. was "very scared of [Lavalley]," and "the fact that he's staring at her, it is very hard for her to even state anything."

A former prosecutor on the case also testified that it was very difficult for B. J. to talk about the sexual abuse, and that B. J. had disclosed that Lavalley repeatedly threatened that she would never be able to see him, her mother, or her siblings again if she reported the abuse.[2] He further testified that he had been with B. J. during the prior recess and she told him that she was having difficulties testifying because her

---

[2] Lavalley's motion to disqualify this particular prosecutor as a key witness in the case had been previously granted by the trial court.

father, her uncle, and her sister were present.[3] The prosecutor also stated that B. J. had been able to discuss specific details of the abuse with him during the recess.

Finally, B. J.'s licensed professional counselor testified that B. J. suffered from post-traumatic stress disorder, and she opined that testifying in court in the presence of Lavalley would cause B. J. severe psychological harm. The counselor also reported that B. J. had told her that Lavalley began the sexual abuse when she was six to eight years old, continuing until she was twelve, by which point it was occurring almost every night. At the close of the evidence, the trial court granted the State's motion,

---

[3] Lavalley contends that this testimony tends to prove that B. J.'s inability to testify as to the criminal acts was due to the stress of being in a courtroom in general; thus, the trial court erred in allowing her to testify outside his presence. See *Craig*, 497 U. S. at 856 (III). This argument is unavailing. Notably, this testimony conflicted with that of the aunt, who attributed B. J.'s condition to Lavalley's presence alone — as well as B. J.'s own testimony that she was having "a hard time" because of Lavalley's presence, but that the presence of other relatives in the courtroom did not make her nervous. As such, it was for the trial court to resolve this conflict, and we will not disturb its ruling on this ground. *Williams v. State*, 367 Ga. App. 485, 489 (1) (887 SE2d 344) (2023) ("[W]e leave to the fact-finder the resolution of conflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts.") (citations and punctuation omitted).

and permitted B. J. to testify by one-way closed circuit television from another courtroom.[4]

As set forth above, our consideration of whether a trial court correctly permitted a child to testify outside the presence of the defendant demands a case-by-case analysis. *Craig*, 497 U. S. at 855 (III). Given the record before us, the trial court fully complied with the dictates of OCGA § 17-8-55, and we conclude that the court's decision to allow B. J. to testify via one-way closed circuit television was both supported by the preponderance of the evidence and necessary to protect B. J.'s welfare. Id.; OCGA § 17-8-55 (d).

At the time of the trial, B. J. was 15 years old, and was thus deemed a child under OCGA § 17-8-55 (a).[5] In addition to the hearing testimony recounted above, the trial court was able to witness B. J.'s demeanor and conduct on the stand. As the record reflects, B. J. was generally willing to testify in Lavalley's presence until she

---

[4] The trial court later issued an exhaustive order addressing the specific factors under OCGA § 17-8-55 (d) as listed supra.

[5] Lavalley concedes that B. J. was "technically" a child under OCGA § 17-8-55 (a), but nevertheless argues that she was nearing the upper reaches of the age limitation, and we should consider that an earlier version of the statute applied only to children aged ten years or younger. See OCGA § 17-8-55 (a) (effective to June 30, 2014). Suffice it to say, B. J. qualified as a child under the applicable version of the statute at the time of trial.

was asked about the specific acts of abuse. As such, the trial court correctly found that B. J. "would be traumatized, not by the courtroom generally, but by the presence of [Lavalley]." *Craig*, 497 U. S. at 856 (III). In addition to B. J.'s inability to communicate when asked about Lavalley's abuse in his presence, the aunt's testimony regarding B. J.'s extreme physical symptoms during the recess further establishes that B. J.'s emotional distress was more than de minimis, "i.e., more than mere nervousness or excitement or some reluctance to testify[.]" (Citations and punctuation omitted.) Id. (noting that the Maryland statute, "which requires a determination that the child witness will suffer 'serious emotional distress such that the child cannot reasonably communicate,' clearly met [the minimum] constitutional standards."); see also Md. Code Ann. § 11-303 (providing for child abuse victim to testify outside of the defendant's presence).

Nevertheless, Lavalley takes issue with the trial court's findings pertaining to the list of circumstances set forth in OCGA § 17-8-55 (d). But, he overlooks the plain language of the statute,[6] which makes this list neither exhaustive nor cumulative.

---

[6] When presented with a question of statutory interpretation, we begin by examining the statute's plain language, reading the text in its most natural and reasonable way, as an ordinary speaker of the English language would. Thus,

10

OCGA § 17-8-55 (d). Notably, as the trial court explained, the relevant language of the Code section reads: "In determining whether a preponderance of the evidence has been shown, the court *may* consider *any one or more* of the following circumstances[.]" (Emphasis supplied.) Id. In other words, satisfying a single factor could potentially trigger the statutory procedure in a proper case. And, in this case, the hearing testimony recounted above satisfies several of the statutory factors, as the trial court so found.

Specifically, OCGA § 17-8-55 (d) (1) focuses on the nature and severity of the offense, and, here, B. J. reported to the therapist that Lavalley had penetrative sex with her, beginning when she was six to eight years old and recurring frequently until she was twelve. This evidence also satisfies other factors that focus on the age of the child, as well as the ongoing and prolonged nature of the offenses. See OCGA § 17-8-55 (d) (2), (4). OCGA § 17-8-55 (d) (3) (A) scrutinizes the relationship between the

> when considering the meaning of a statute, we must afford the statutory text its plain and ordinary meaning, viewed in the context in which it appears. If the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

(Citation omitted.) *State v. Walker*, 367 Ga. App. 365, 367 (884 SE2d 581) (2023).

11

victim and the accused, which here was between a father and his biological daughter. OCGA § 17-8-55 (d) (8) takes into account any threats made to the child regarding the dissolution of the family unit should she disclose the offenses, as the former prosecutor here recounted. And OCGA § 17-8-55 (d) (11) contemplates expert testimony as to the child's susceptibility to psychological trauma if forced to testify in the presence of the accused, as the therapist so testified.[7]

---

[7] With regard to this factor, Lavalley contends that the trial court erred because the therapist was not tendered as an expert prior to her hearing testimony. This argument is unavailing. At the hearing, the therapist testified that she was a licensed professional counselor and she had been practicing in the profession for 46 years. As such, the State was not required to tender her as an expert. *Elrod v. State*, 354 Ga. App. 177, 179 (1) (840 SE2d 658) (2020); *Dimauro* v. State, 341 Ga. App. 710, 719-720 (3) (a) (801 SE2d 558) (2017), overruled on other grounds by *State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020) ("[A]lthough much preferred for the sake of clarity and certainty and to preclude question, it is not required that an expert be formally tendered.") (citations and punctuation omitted); *Wilson v. State*, 317 Ga. App. 171, 176-177 (1) (c) (ii) (730 SE2d 500) (2012) ("[W]here a witness's qualifications are established, [s]he does not have to be formally tendered and accepted as an expert in order to give expert opinion testimony[.]"). We further note that this witness was later tendered without objection as an expert in psychotherapy during the trial. Finally, this factor is just one of several that the State satisfied to meet the necessity prong of the analysis. See OCGA § 17-8-55 (d); *Craig*, 497 U. S. at 855-856 (III).

12

Thus, the trial court correctly determined that allowing B. J. to testify outside of LaValley's presence was necessary to protect her welfare.[8] See *Craig*, 497 U. S. at 855-856 (III); OCGA § 17-8-55 (d). Accordingly, we affirm the trial court's denial of Lavalley's motion for new trial.

*Judgment affirmed. McFadden, P. J., and Brown, J., concur.*

---

[8] We are wholly unpersuaded by Lavalley's contention that the fact that B. J. willingly made a statement at his sentencing is "the strongest proof that there was no necessity" for her to testify outside his presence earlier in the trial. As set forth above, B. J.'s non-communicativeness and psychological distress in Lavalley's presence was related to any discussion of the specific details of his abuse — a subject she did not broach in her statement, other than to state her wish that he "get some help."